545 S.E.2d 853

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Larry B. RAMSEY, Defendant, Appellant.**

No. 26852.

Supreme Court of Appeals of West Virginia.

Submitted April 12, 2000.

Decided June 12, 2000.

Darrell V. McGraw, Jr., Esq., Attorney
General, Silas B. Taylor, Esq., Senior Deputy

Attorney General, Leah Perry Macia, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

Damon B. Morgan, Jr., Esq., Nibert & Morgan, Point Pleasant, West Virginia, Attorney for Appellant.

PER CURIAM:

The defendant, Larry Ramsey, appeals his December 3, 1998 conviction by jury of the felony offenses of manufacturing a controlled substance and of conspiracy to manufacture a controlled substance. By order dated December 7, 1998, the Circuit Court of Jackson County entered the guilty verdicts. The defendant was sentenced to the penitentiary for a term of one to five years for each offense, with the sentences to run concurrently. The defendant now raises several assignments of error on appeal to this Court.

## I.

## FACTS

On the morning of July 20, 1997, three law enforcement officers, Christopher Metz, a sergeant with the Jackson County Sheriff's Department, Derrick Taylor, a member of the Ripley Police Department, and Roger D. Rhodes, a deputy sheriff with the Jackson County Sheriff's Department, were conducting surveillance of a patch of 14 marijuana plants in rural Jackson County.[1] Officers Taylor and Metz watched the marijuana patch while Officer Rhodes was located about 100 yards away observing the nearby road.

Officer Rhodes testified that he first saw the defendant, Larry Ramsey, and his son, Todd Ramsey, walking on a logging road toward the marijuana patch with milk jugs containing water.[2] Officers Metz and Taylor videotaped the defendant and his son looking at the marijuana plants. When the defendant and his son noticed Officers Metz and Taylor, they departed in separate directions and the defendant retreated in the direction from which he had come. Officer Rhodes subsequently encountered the defendant and his son on the road, and they were arrested.[3] A search of the defendant's home revealed issues of "High Times" and "Hemp Times" Magazines, and several pages of literature concerning marijuana seeds.[4]

Todd Ramsey entered a plea of guilty to manufacturing a controlled substance and was sentenced to one to five years. He testified at the defendant's trial that he had grown the marijuana plants himself and that, prior to July 20, 1997, the defendant had no knowledge of the plants. The defendant also testified that he had no knowledge of the marijuana plants prior to his discovery of them on July 20, 1997.

The defendant was found guilty of manufacturing a controlled substance and conspiracy to manufacture a controlled substance. He was acquitted of possession with intent to deliver a controlled substance and conspiracy to possess with intent to deliver a controlled substance.

## II.

## DISCUSSION

We will now discuss the several assignments of error raised by the defendant.

---

1. The marijuana patch was located on the property of an elderly neighbor who lived several hundred yards from the defendant and his son. The investigating officers concluded that the owner of the property had no knowledge of the marijuana plants.

2. Todd Ramsey testified that the milk jugs were empty.

3. Officer Rhodes testified that he heard a noise in the brush and shouted "sheriff's department, come out." The defendant emerged from the brush with his dogs. When Officer Rhodes asked the defendant what he was doing, the defendant replied that he was walking his dogs. A short time later, the defendant's son arrived on the scene. The State's evidence was that Officers Metz and Taylor then arrived at the scene and arrested the defendants. The defendant testified that Officer Rhodes informed him, "[y]ou're under arrest; get down on your knees." Todd Ramsey testified that, although unsure, he believed it was Officer Rhodes who arrested him and the defendant.

4. According to the defendant, these items were located in the bedroom of Brad Ramsey, another son of the defendant.

*Issue # 1—Validity of the Search Warrant*

The defendant attacks the validity of the search warrant executed for the search of his home on two grounds.[5] First, the defendant argues that the search warrant was invalid due to the reckless insertion of false facts. Both the affidavit and complaint for the search warrant, executed by Officer Metz, and the search warrant stated in pertinent part:

> ... Cpl. C.C. Metz and Dep. Roger Rhodes did observe Larry B. Ramsey and Todd Ramsey his son bringing water to and taking care of seven [7] marijuana plants located next to the residence of the suspect.

Officer Rhodes testified at the pre-trial suppression hearing and at trial that he did not observe the defendant and his son at the marijuana plants, but that he did observe the defendant and his son walking toward the area where the marijuana plants were located, and both were carrying milk jugs containing water. Officer Metz, on the other hand, testified that he did not see the defendant and his son bringing water to the plants but he did see them inspecting the plants. The defendant concludes that the warrant affidavit contains false statements because both officers did not see the defendant bringing water to the marijuana plants, and because Officer Metz testified that he saw the defendant "inspecting" the plants which, says the defendant, is different from "taking care" of them.

■ We recently set forth the standard governing this issue in Syllabus Point 1 of *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995) where we stated in part:

> To successfully challenge the validity of a search warrant on the basis of false information in the warrant affidavit, the defendant must establish by a preponderance of the evidence that the affiant, either knowingly and intentionally or with reckless disregard for the truth, included a false statement therein.

Thus, the defendant must show by a preponderance of the evidence both that there was a false statement in the search warrant, and that it was placed there intentionally and knowingly or with a reckless disregard for the truth. "Mere negligence or innocent mistake is insufficient to void a warrant." *State v. Lilly*, 194 W.Va. at 601, 461 S.E.2d at 107, *citing Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667, 682 (1978). In determining whether a statement is false, this Court has said that "a statement in a warrant is not false ... merely because it summarizes facts in a particular way; if a statement can be read as true, it is not a misrepresentation." *Lilly*, 194 W.Va. at 601, 461 S.E.2d at 107. Finally, we give great deference to a trial court's findings so that "findings of a circuit court concerning whether an affidavit contains deliberately falsified information are not subject to reversal unless they are clearly wrong." *Id., citing State v. Wood*, 177 W.Va. 352, 354–55, 352 S.E.2d 103, 105–06 (1986).

■ Applying this law to the instant facts, we do not believe that the warrant affidavit contains false statements. Rather, the affidavit may be read as merely summarizing facts in a particular way. The defendant was seen by one of the officers listed in the warrant affidavit both walking toward the marijuana plants with a jug of water and inspecting the plants. Also, we believe that "inspecting" marijuana plants may fairly be characterized as "taking care" of them. Even presuming that the statements at issue constitute misrepresentations, however, the defendant has failed to prove that they are the result of more than mere negligence or mistake.

■ Second, the defendant attacks the validity of the search warrant on the basis that the magistrate who issued it failed to exercise independent judgment. The defendant bases this claim on Officer Metz's testimony that Deputy Sheriff Bruce DeWees wrote the warrant affidavit and the body of the search

---

5. Altogether, four search warrants were executed. The first two warrants were executed on July 20, 1997. The third warrant was executed on July 21, 1997 and related only to the seizure of Todd Ramsey's computer. The fourth warrant was executed on July 29, 1997. The evidence seized from the defendant's residence by the fourth warrant was ordered suppressed by the trial court because the description of the defendant's property was found to be inaccurate.

warrant, and that the magistrate signed and dated it. In addition, avers the defendant, the evidence fails to demonstrate that the magistrate questioned the police officers concerning the existence of probable cause. The defendant concludes from this that the magistrate failed to exercise independent judicial judgment.

■ In Syllabus Point 2 of *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975), this Court stated:

The constitutional guarantee under W.Va. Const., Article III, § 6 that no search warrant will issue except on probable cause goes to substance and not to form; therefore, where it is conclusively proved that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant will be held invalid and the search will be held illegal.

The facts of *Dudick* were that during a motion to suppress the evidence seized under the search warrant, defendant's counsel called to the stand the justice of the peace who issued the warrant. The justice of the peace testified that he signed or stamped the search warrant without being aware that the search warrant was being sought upon the information of "a reliable informant," 158 W.Va. at 641, 213 S.E.2d at 466, without knowing who the informant was, and without making an independent determination as to whether the informant was reliable. This Court found that the magistrate became a mere agent of the prosecution and held the search warrant invalid.

In *State v. Slonaker,* 167 W.Va. 97, 280 S.E.2d 212 (1981), we reiterated our holding in *Dudick.* In *Slonaker,* as in *Dudick,* the magistrate who issued the search warrant was not involved in the preparation of the affidavit or the warrant. However, we found that the magistrate's subsequent questioning

of the affiant was adequate to permit him to make an independent evaluation of probable cause.

Finally, in *State v. Bates,* 181 W.Va. 36, 380 S.E.2d 203 (1989), it was claimed that the magistrate who issued the search warrant did not direct the police officer in filling out the search warrant but merely watched the officer sign the affidavits under oath. The record revealed, however, that after reading the affidavit and warrant prepared by the officer, the magistrate requested the officer to relate the circumstances leading to his request for a search warrant. This Court concluded that, like the magistrate in *Slonaker,* the magistrate acted in a sufficiently independent manner, by conducting an examination of the affiant under oath, to validate the search warrant.

■ In the instant case, there is evidence that the search warrant was prepared by Officer DeWees and not the magistrate. But unlike *Dudick, Slonaker, and Bates,* the record does not reveal the process that occurred prior to the magistrate's issuance of the search warrant. "[O]rdinarily this Court will not go behind the thought processes of a judge or magistrate" when examining the validity of a search warrant. *Dudick,* 158 W.Va. at 641, 213 S.E.2d at 465. We depend, rather, upon the affidavit in support of the search warrant which is usually the only available evidence of the facts and circumstances justifying the issuance of the warrant. We will only go beyond the warrant affidavit to examine the thought processes of the magistrate "when other evidence conclusively demonstrates that a magistrate is so influenced by the police that he becomes a mere agent of the prosecution[.]" *Dudick,* 158 W.Va. at 642, 213 S.E.2d at 466. There is no such evidence in the present case.[6] Instead, the defendant presents us with only the search warrant prepared by Officer DeWees and signed and dated by the magis-

6. The defendant states that no independent questioning was undertaken by the magistrate and no record of any questioning exists as required by Rule 41(c) of the West Virginia Rules of Criminal Procedure. Rule 41(c) provides that "[b]efore ruling on a request for a warrant the magistrate or circuit judge *may* require the affiant to appear personally and *may* examine under oath

the affiant and any witnesses the affiant may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit." (Emphasis added.) The rule clearly provides that questioning of the affiant or other witnesses is discretionary with the magistrate or circuit judge.

trate and the naked assertion that the magistrate failed to exercise independent judicial judgment. Therefore, the defendant has not conclusively shown that the magistrate failed to make an independent evaluation of the circumstances surrounding the request for a warrant. Accordingly, we find that the circuit court did not err in holding that the search warrant issued for the search of the defendant's house was valid.

### Issue # 2—Two Conspiracy Counts

As his second assignment of error, the defendant asserts that the circuit court erred in not dismissing one of the conspiracy counts in the indictment prior to trial. According to the defendant, the evidence presented supported the existence of only one conspiracy, one both to manufacture and sell marijuana.[7] The defendant argues that allowing both conspiracy counts to go to the jury confused the jury and prejudiced the defendant.

■■■■ In Syllabus Point 1 of *State v. Hoke,* 76 W.Va. 36, 84 S.E. 1054 (1915), this Court stated "[i]f the count in an indictment on which a conviction is had is good, it is immaterial whether a demurrer to other counts should have been sustained. If error is committed in overruling the demurrer, it is clearly not prejudicial to the accused." The defendant in this case was convicted of only one count of conspiracy. Further, he does not contend that the evidence is insufficient to support his conviction of this single conspiracy. Therefore, the defendant's complaint that he was tried for another conspiracy count for which he was not convicted is rendered immaterial. The defendant was not prejudiced by the improper conspiracy

count, if such it was, a question we need not decide.

■■■■ At this point, we note that the defendant's next three assignments of error, concerning the admission of evidence, were not objected to at trial.[8] Therefore, the admission of this evidence must invoke the plain error doctrine before this Court will reverse the defendant's conviction. In Syllabus Point 7 of *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court held that in order "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Accordingly, we will analyze the next three assignments of error under our plain error rule.

### Issue # 3—Admission of Defendant's Silence

During the State's direct examination of Officer Rhodes concerning his encounter with the defendant, the following testimony occurred:

Q. When Mr. Ramsey came out and you told him to get down, then what happened?

A. I asked him what he was doin'. He said he'd been walkin' his dogs because they'd been cooped up for a couple of weeks.

Q. Did he say anything else?

A. No.

During the State's cross-examination of the defendant, the following responses were elicited concerning the same matter:

---

7. Prior to the defendant's conviction, a trial of the defendant on the same charges resulted in a hung jury. The defendant contends, therefore, that prior to the second trial, the court was aware that the State's evidence supported the existence of only one conspiracy.

8. The defendant concedes only that the admission of the defendant's silence was not preserved for appeal. Our search of the record reveals, however, that the following two alleged errors were not objected to at trial either. The defendant moved in limine prior to trial for the suppression of alleged co-conspirator statements. We stated in Syllabus Point 1 of *Wimer v. Hinkle,*

180 W.Va. 660, 379 S.E.2d 383 (1989) that "[a]n objection to an adverse ruling on a motion in limine to bar evidence at trial will preserve the point, even though no objection was made at the time the evidence was offered, unless there has been a significant change in the basis for admitting the evidence." However, according to the defendant, the motion was reserved by the trial court for ruling during trial. At trial, the evidence was admitted without objection. Therefore, the defendant did not give the trial court an opportunity to rule on the issue of alleged co-conspirator statements.

Q. So, when Roger Rhodes stopped you, did you say, "Roger, there's a marijuana patch back up there?"

A. I never said nothing.

Q. You didn't say that to Officer Rhodes, did you?

A. He didn't give me the opportunity to say nothing.

Q. You didn't volunteer that, did you?

A. No.

Finally during the State's closing argument, the prosecuting attorney characterized the defendant's conduct immediately prior to his arrest by stating:

If things happened the way Larry Ramsey tried to tell you, he would have just walked down the road. He knew what was going on. Somebody had caught them. He didn't say, "Don't shoot." He just left. He and Todd went in opposite directions. That's not a coincidence either.

When Mr. Ramsey came out of the brush, he was confronted by a person he's known for years and knows to be a law enforcement officer. Did he say, "Oh, Roger, thank goodness you came along; I was in somebody's marijuana patch and I saw somebody up there. You better go see who's up there." No, he didn't say that. He didn't say anything, because he knew what had happened.

The defendant now claims that these admissions into evidence of his silence undermined the presumption of innocence.

 In Syllabus Point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court stated:

Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

Our holding in *Boyd* was based on the United States Supreme Court holding in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) that the constitutional right to remain silent carries with it the principle that a defendant cannot be impeached at trial by his pre-trial silence. The *Doyle–Boyd* rule does not apply in the instant case, however, because there is evidence that the defendant's silence occurred prior to his arrest and the giving of *Miranda* warnings.

In *State ex rel. Boso v. Hedrick*, 182 W.Va. 701, 391 S.E.2d 614 (1990), the defendant claimed ineffective assistance of counsel because his lawyer failed to object to the State's cross-examination of him regarding his pre-trial silence. The defendant claimed at trial that he was at his mother's home when the crime was committed. On cross-examination, he was asked why he had not disclosed this exculpatory information when he surrendered to police.[9] This Court found that the *Doyle–Boyd* principle did not apply, and explained:

We recognized in *[State v.] Oxier*, ... [175 W.Va. 760, 338 S.E.2d 360 (1985)], that in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the United States Supreme Court held the prosecutor's cross-examination of the defendant regarding his post-arrest silence did not violate *Doyle* because there were no *Miranda* warnings given. [175] W.Va. at [761], 338 S.E.2d at 361. In *Oxier*, we noted that the Supreme Court in *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86, 96 (1980), reasoned:

"In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that impeachment

9. In *Hedrick*, the defendant turned himself in the day after the crime was committed. The police testified that he was not asked to give a statement and was, therefore, not given any *Miranda* warnings. Although this was disputed by the defendant, the trial court at the habeas hearing concluded that no *Miranda* warnings were given and, therefore, the *Doyle–Boyd* principle did not apply.

by use of prearrest silence does not violate the Fourteenth Amendment."

■ Our rationale in *Hedrick* applies to the facts of the instant case. In his brief to this Court, the defendant argues that the silence admitted at trial was post-arrest.[10] The State's evidence, however, was that the defendant's silence when he encountered Officer Rhodes occurred prior to the defendant's arrest. Specifically, Officer Rhodes testified that after his encounter with the defendant, in which the defendant said only that he was walking his dogs, Officers Metz and Taylor arrived, identified themselves, read the defendant the *Miranda* warnings, and placed them under arrest. Because of the evidence that the defendant's silence occurred prior to his arrest and the giving of *Miranda* warnings, we conclude that the use of this silence at trial was not plainly wrong.[11]

### 4. Admission of Todd Ramsey's Statement

■ The defendant next argues that the circuit court erred in admitting the out-of-court statement of Todd Ramsey in which he allegedly said to Officer Rhodes "[y]ou're not going to turn us in are you, Roger?"[12] The defendant notes that according to Rule 801(d)(2)(E) of the West Virginia Rules of Evidence, an out-of-court statement by an alleged co-conspirator is not admissible at the trial of another alleged co-conspirator unless it is made during the course of and in furtherance of the conspiracy. According to the defendant, by the time this statement was made any conspiracy had been thwarted.

■ In Syllabus Point 3 of *State v. Helmick*, 201 W.Va. 163, 495 S.E.2d 262 (1997), we stated:

Under Rule 801(d)(2)(E) of the West Virginia Rules of Evidence, a declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity.

In *Helmick*, an alleged co-conspirator to murder testified at the defendant's trial that the day following the murder, the defendant admitted to killing the victim. The defendant contended in his appeal to this Court that this alleged statement to the alleged co-conspirator was not admissible under Rule 801(d)(2)(E) of the West Virginia Rules of Evidence because it was made after the termination of the conspiracy. We disagreed and found that the statement was made during the course of the conspiracy because the conspirators were still concerned with the concealment of their criminal conduct and their identity. However, we concluded that the statement did not fall within the co-conspirator exemption to the hearsay rule because it did not serve to further the conspiracy.[13]

In the instant case, the statement made by Todd Ramsey to Officer Rhodes was made when the co-conspirators were still concerned with the concealment of their criminal conduct and their identity. Therefore, it was made in the course of the conspiracy. Also, unlike in *Helmick*, the statement was clearly made to serve the purpose of concealing the conspiracy to grow marijuana in that it was

**10.** *See* footnote 3.

**11.** The defendant's silence was first admitted into evidence through the testimony of Officer Rhodes during the State's case-in-chief and not to impeach the defendant on cross-examination. We do not believe, however, that Officer Rhodes' brief and isolated testimony constitutes prejudicial error. In *State v. Hamilton*, 177 W.Va. 611, 355 S.E.2d 400 (1987), a police officer testified that the defendant made no statement *after* the defendant's arrest and *Miranda* warnings were given. This Court determined that the comment was not about the defendant's failure to give his story or alibi at the time he was arrested and that its prejudicial effect was minimal. In the instant

case, the officer simply stated "no" to the prosecutor's query concerning whether the defendant said anything else to the officer prior to the defendant's arrest. We believe that this was not prejudicial to the defendant.

**12.** Todd Ramsey testified that, although unsure, he thought that he said something to the effect of "Roger, you're not going to try to pin this on us?"

**13.** We concluded, however, that the testimony was admissible under Rule 804(b)(3) of the West Virginia Rules of Evidence, the statement against interest hearsay exception.

designed to persuade Officer Rhodes, a long-time acquaintance, not to arrest the defendant and his son. Accordingly, we find no error in the admission of Todd Ramsey's statement to Officer Rhodes.

### Issue # 5—Admission of Defendant's Wife's Statement

Officer Metz testified that when he and the defendant arrived at the defendant's house subsequent to the arrest, the defendant's wife said to him, "I warned you about this. I'm not comin' to get you out." The defendant argues that Officer Metz's testimony was a violation of the husband-wife privilege and the hearsay rule. While W.Va. Code, 57–3–3 (1923) provides that generally a husband and wife shall not be allowed to be called as a witness against the other in criminal cases, as conceded by the defendant, this code section applies only to the spouse's in-court testimony and, thus, is not applicable here. *State v. Bailey,* 179 W.Va. 1, 365 S.E.2d 46 (1987).

The defendant also avers that the admission of this statement violated the hearsay rule. Unfortunately, the admission of this evidence was not objected to at trial so that we do not know the trial court's reason for allowing it. While it may be argued that the statement was admissible as a statement against interest pursuant to Rule 804(b)(3) of the West Virginia Rules of Evidence, this Court will presume that the admission of the statement was error. We fail to see, however, how the error affected the substantial rights of the defendant. In *State v. Miller, supra,* we said that to affect substantial rights, the error "must have affected the outcome of the proceedings in the circuit court." 194 W.Va. at 18, 459 S.E.2d at 129. Further, "[i]t is the defendant rather than the [prosecutor] who bears the burden of persuasion with respect to prejudice." *Id., quoting United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508, 520 (1993). After reviewing the record and the State's evidence, we are unable to conclude, and the defendant has not proved to us, that the admission of his wife's statement affected the outcome of the trial. Accordingly, we find that it does not constitute plain error.

### 6. Denial of Probation

Finally, the defendant claims that it was an abuse of discretion for the trial court to sentence him to the penitentiary without making specific findings justifying such a sentence. According to the defendant, he met all of the trial court's requirements for probation except for the fact that he was not quick to express remorse. Under any objective standard, says the defendant, this is not a crime that justifies sending an otherwise productive member of society to the penitentiary. The defendant further argues that the order refusing release on probation did not contain a statement of the reasons for the refusal of probation, in violation of W.Va. Code § 62–12–8.

We have previously recognized that "a defendant convicted of a crime has no absolute right to probation." *State v. Loy,* 146 W.Va. 308, 318, 119 S.E.2d 826, 832 (1961). Rather, probation is "a matter of grace." Syllabus Point 3, *State ex rel. Winter v. MacQueen,* 161 W.Va. 30, 239 S.E.2d 660 (1977). Accordingly, "[t]he decision of a trial court to deny probation will be overturned only when, on the facts of the case, that decision constituted a palpable abuse of discretion." Syllabus Point 2, *State v. Shafer,* 168 W.Va. 474, 284 S.E.2d 916 (1981). There is simply nothing in the facts of this case to persuade us that the trial court's decision to deny probation was either arbitrary or erroneous.

W.Va.Code § 62–12–8 (1939) states in relevant part that "[o]rders granting or refusing release on probation shall contain a brief statement by the court of the reasons for its action." The trial court order states:

> Based upon the matters set forth in the within presentence investigation report, the jury verdict filed herein, the statements of the Defendant and his attorney, and all other matters appearing of record to the Court, the Court could not find that the Defendant was unlikely to again commit crime, and that the public weal did not require that the Defendant be imprisoned[.]

We believe that this is sufficient to meet the requirement of W.Va.Code § 62–12–8. In *State v. Shafer,* this Court found an order denying probation satisfactory which read: "the ends of justice would not be served by placing the defendant on probation." 168 W.Va. at 477, 284 S.E.2d at 919. The Court concluded that "[w]hile such language is conclusory and perhaps not in the true spirit of the statute, we cannot say that it constitutes error." *Id.* The order in the instant case is much more detailed than the one found sufficient in *Shafer.* Accordingly, we find that the trial court did not abuse its discretion in denying probation to the defendant, and that the trial court's order met the requirement of W.Va.Code § 62–12–8.

### III.

### CONCLUSION

In sum, we find, for the foregoing reasons, that the trial court did not commit prejudicial error. Accordingly, we affirm the final order of the Circuit Court of Jackson County.

Affirmed.