561 S.E.2d 783

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Robert F. McCLAIN, Defendant Below, Appellant.**

No. 29839.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2002.

Decided Feb. 21, 2002.

Dissenting Opinion of Chief Justice Davis March 27, 2002.

Concurring Opinion of Justice Starcher March 29, 2002.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, West Virginia, Attorneys for the appellee.

Richard E. Holicker, Public Defender Corporation, Charleston, West Virginia, Attorney for the appellant.

ALBRIGHT, Justice:

Robert McClain (hereinafter "Appellant") appeals the April 13, 2001, order of the Kanawha County Circuit Court denying his motion, filed pursuant to Rule 35 of the Rules of Criminal Procedure, to correct the sentence imposed after he pled guilty to the offense of leaving the scene of an accident which resulted in death. Appellant specifically argues that the trial court's refusal to grant him credit for the time he served in jail before he was convicted due to the fact that he could not meet the bail requirements for pretrial release amounted to violation of the equal protection and double jeopardy clauses of the West Virginia Constitution. Based upon the briefs and arguments of the parties and a full review of the record, we remand this case with direction to amend the sentencing order so as to provide credit for the time Appellant spent in jail before his conviction.

### I. Factual and Procedural Background

On the night of September 2, 2000, Appellant was driving with a female companion in his car when, during the course of an argument with the companion, Appellant felt his car hit something which he guessed was a dog or other animal. After stopping his vehicle and detecting nothing in his rearview mirror, Appellant proceeded on his way. In his statement to the police, Appellant said that the next morning he noticed that the car's passenger side headlight was damaged and the hood of the car was dented. Four days after this incident, the body of Richard Parry was found on the side of the road in the vicinity where Appellant was driving.

According to Appellant, although he decided to contact the authorities when he heard about the discovery of Mr. Parry's body in the area where he had been driving, the police arrested him before he could do so. Following his arrest on September 7, 2000, Appellant was charged in magistrate court with feloniously driving and operating a motor vehicle and leaving the scene of an accident from which death resulted. During the initial appearance before the magistrate, Appellant waived a preliminary hearing and thereafter was committed to the regional jail because he was unable to satisfy the $150,000 bail fixed by the magistrate. Appellant filed a motion for reduction of bail in the circuit court on September 21, 2000, requesting specifically that bail be set at not more than $20,000.

The grand jury returned an indictment during the September 2000 term of court, charging Appellant with leaving the scene of an accident resulting in death and operating a motor vehicle while his license was suspended for driving under the influence (hereinafter "DUI"). Appellant was arraigned on these charges on November 22, 2000, at which time the lower court set the date for trial and continued bail, but at the reduced amount of $75,000. Appellant still could not satisfy the new bail amount established by the circuit court, so he was returned to jail to await trial on January 2, 2001.

On the day of trial and pursuant to the terms of a plea agreement, Appellant tendered to the court a plea of guilty to the charge of leaving the scene of an accident resulting in death. In return for Appellant's guilty plea, the State recommended probation and moved to dismiss the charge of driving on a license suspended for DUI. The lower court accepted Appellant's guilty plea on January 2, 2001, and at that time also set the sentencing hearing for March 30, 2001, and fixed the amount of post-conviction bail at $20,000. Appellant was able to post the requisite bond at this point, and was released from custody after spending 119 days in jail.

As detailed in the March 30, 2001, sentencing order, the lower court, acting sua sponte, suspended the imposition of sentence and

released Appellant on probation for a period of three years with one of the conditions of probation being that Appellant spend six months confined in the regional jail during the probationary period. The sentencing court explained during the sentencing hearing that Appellant was not given credit for the 119 days he spent in jail awaiting trial because the six-month incarceration condition was not the sentence, but a part of probation. The sentencing judge added: "If he were sentenced to the penitentiary, he would get credit for the one hundred and nineteen (119) days he served. As a condition of probation, he is not getting credit for those days." Appellant challenged the circuit court's decision not to give him credit for the time he served in jail awaiting trial by filing a motion on April 9, 2001, to correct the sentence pursuant to Rule 35(a) of the Rules of Criminal Procedure.[1] Without conducting a hearing, the lower court denied the motion to correct the sentence by order entered April 13, 2001. It is from this order that the instant appeal is taken.

## II. Standard of Review

■■■■ As a general rule, the sentence imposed by a trial court is not subject to appellate review. However, in cases as the one before us in which it is alleged that a sentencing court has imposed a penalty beyond the statutory limits or for impermissible reasons, appellate review is warranted. Syl. Pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). Once an appropriate basis for review is established, this Court applies a three-prong standard of review to issues involving motions made pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure: "We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syl. Pt. 1, in part, *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996).

## III. Discussion

This appeal involves a challenge to the penalty prescribed by the lower court for the felony offense of leaving the scene of an accident resulting in the death of a person for which a person upon conviction "may be confined in a correctional facility for not more than three years." W.Va.Code § 17C–4–1 (1999) (Repl.Vol.2000).[2] Although Appellant's argument centers on violation of his rights under the state constitution because the sentencing court refused to credit him with the 119 days he served in jail, we would be remiss in carrying out our constitutional duty if we did not first examine the question fairly arising on the record of whether the underlying penalty was a correctly imposed alternative punishment in light of the pertinent statute governing probation conditions. W.Va. Constit. art. VIII, § 4.[3]

■■■■ The mandatory and discretionary conditions related to probation are set forth in West Virginia Code § 62–12–9 (2001)

1. Rule 35(a) of the Rules of Criminal Procedure provides that: "The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time period provided herein for the reduction of sentence."

2. The provisions of West Virginia Code § 17C–4–1 relevant to this case are:
   (a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and shall remain at the scene of the accident until he or she has complied with the requirements of section three of this article: Provided, That the driver may leave the scene of the accident as may reasonably be necessary for the purpose of rendering assistance to an injured person as required by said section three. Every such stop shall be made without obstructing traffic more than is necessary.
   (b) Any person violating the provisions of subsection (a) of this section after being involved in an accident resulting in the death of any person is guilty of a felony and, upon conviction thereof, shall be punished by confinement in a correctional facility for not more than three years or fined not more than five thousand dollars, or both.

3. Article 8, section 4 of the West Virginia Constitution addresses the scope of decisions of this Court and directs: "When a judgment or order of another court is reversed, modified or affirmed by the [supreme] court, every point fairly arising upon the record shall be considered and decided. . . ."

(Supp.2001).[4] One of the allowable discretionary conditions of probation delineated in this statute is confinement in jail during the term of probation for "a period not to exceed one third of the minimum sentence established by law or one third of the least possible period of confinement in an indeterminate sentence, but in no case may the period of confinement exceed six consecutive months." W.Va.Code § 62–12–9(b)(4). We previously recognized in *State v. White*, 188 W.Va. 534, 425 S.E.2d 210 (1992), that this statutory provision reflects the Legislature's intent to restrict the discretion of the trial court with regard to the amount of time a probationer may be confined to jail as a condition of probation. *Id.* at 536, 425 S.E.2d at 212. In *White* we were faced with a situation where the relevant penalty statute did not contain a minimum sentence nor was an indeterminate sentence involved. However, the trial court had imposed and suspended a twelve-month sentence to a correctional facility before placing White on probation. We concluded in *White* that, in order to give effect to West Virginia Code § 62–12–9(b)(4), the twelve-month sentence actually imposed by the court was an acceptable basis on which the statutorily prescribed one-third calculation could be made. *Id.* at 536, n. 3, 425 S.E.2d at 212, n. 3. We now have before us a somewhat different situation: like the circumstances in *White*, we are dealing with a penalty statute that involves neither an indeterminate sentence nor a minimum sentence; however, unlike *White*, the sentencing judge exercised his option under West Virginia Code § 62–12–3 (1988) (Repl.Vol.2000),[5] to delay imposing a sentence when he granted Appellant probation as an alternative punishment. Consequently, we are faced with the task of resolving the resulting ambiguity by determining whether the Legislature intended to curtail the lower court's discretion in impos-

ing jail as a condition of probation in cases where a penalty statute does not involve a minimum sentence or an indeterminate sentence and no specific sentence is established by the terms of the sentencing order. We approach our task of ascertaining legislative intent of these ambiguous statutory provisions guided by the general process and principles of statutory construction embodied in syllabus point five of *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908):

> A statute should be read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

*Id.* at 660, 63 S.E. at 386.

Turning to the language of West Virginia Code § 62–12–9(b)(4), we initially note that because an indeterminate sentence is not involved the relevant language to the case before us is "a period not to exceed one third of the minimum sentence established by law ... but in no case may the period of confinement exceed six consecutive months." *Id.* In the case subjudice, the applicable penalty for an offense under West Virginia Code § 17C–4–1 is confinement "in a correctional facility for not more than three years." *Id.*

■ One interpretation of these provisions is that the minimum sentence in this case can be as little as one day, which would result in incarceration as a condition of probation not being available when offenses car-

---

4. Although this statute was amended and reenacted after the sentencing order was entered in the instant case, the 2001 amendments to the statute did not substantively affect the issues presented herein.

5. West Virginia Code § 62–12–3 provides, in pertinent part:

Whenever, upon the conviction of any person eligible for probation under the preceding section [§ 62–12–2], it shall appear to the satisfac-

tion of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article.

rying such penalties are at issue. Such a reading could easily serve to dissuade circuit judges from considering probation as an alternative sentence and consequently may result in a more restrictive sentence being imposed which is at odds with another principle of statutory construction summarized in syllabus point one of *Myers v. Murensky,* 162 W.Va. 5, 245 S.E.2d 920 (1978). In *Myers* we held that "[a]mbiguous penal statutes must be strictly construed against the State and in favor of the defendant." *Id.* We have repeatedly applied this rule when presented with interpretation of probation statutes containing ambiguous provisions. *See State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 305 S.E.2d 268 (1983); *State v. Wotring,* 167 W.Va. 104, 279 S.E.2d 182 (1981); *State ex rel. Hanley v. Hey,* 163 W.Va. 103, 255 S.E.2d 354 (1979).

■ We find that a more plausible reading of the provisions in question which applies the rule of strict construction in favor of a criminal defendant that the Legislature intended under the provisions of West Virginia Code § 62–12–9(b)(4) to establish a six-month limit for the period of incarceration which may be imposed as a condition of probation. When a minimum or indeterminate sentence is involved, then the maximum term of incarceration as a condition of probation is one-third of the express minimum or indeterminate sentence or six months, whichever is less; for all other types of statutory penalties, the maximum term of incarceration as a condition of probation is six months. By so holding, we reach a balance between the Legislature's intent to limit incarceration as a condition of probation and to allow sentencing courts discretion in fashioning an appropriate sentence in each case, and we also resolve the statutory ambiguity in favor of the criminal defendant. Applying this holding to the instant case, we find that the period of incarceration imposed as a condition of probation by the sentencing court was appropriate.

■ We now turn to the question of whether the sentencing court was required to credit Appellant with the 119 days he spent in jail prior to conviction. The statute addressing credit for time served in jail prior to conviction is West Virginia Code § 61–11–24 (1923) (Repl.Vol.2000), which provides:

Whenever any person is convicted of an offense in a court of this State having jurisdiction thereof, and sentenced to confinement in jail or the penitentiary of this State, or by a justice of the peace [magistrate] having jurisdiction of the offense, such person may, in the discretion of the court or justice [magistrate], be given credit on any sentence imposed by such court or justice [magistrate] for the term of confinement spent in jail awaiting such trial and conviction.

Although West Virginia Code § 61–11–24 states that the grant of credit for time served prior to conviction is within the discretion of the sentencing court, this Court has held that "[t]he Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that credit for time spent in jail, either pre-trial or post-trial, shall be credited on an indeterminate sentence where the underlying offense is bailable." Syl. Pt. 1, *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39 (1978). As Appellant correctly notes, although our holding in *Martin* only referred to indeterminate sentences, we later explained that the rule announced in *Martin* applies equally to determinate sentences since the same concerns are raised:

Constitutional protections are implicated because a person who is unable to make bail will be incarcerated before trial. If such person is not given credit for the jail time, a longer period of incarceration will occur than for the person who commits the same offense but is released on pretrial bail.

*State ex rel. Roach v. Dietrick,* 185 W.Va. 23, 25 n. 5, 404 S.E.2d 415, 417 n. 5 (1991). The State does not question whether a different rule applies to determinate versus indeterminate sentences, but argues instead that a trial court is not mandated by the constitutional provisions involving the principle of equal protection and the prohibition against double jeopardy to grant credit for time served unless the maximum allowable sentence is imposed. We fail to see how the imposition of this limitation would cure the inherent equal protection and double jeopar-

dy problems which arise when two people receive a sentence for the same term of incarceration but one of those people actually serves a longer period of time in jail simply because he or she is financially unable to post the bail required to secure pretrial release.

■ We also are not persuaded by the State's argument that it was appropriate for the sentencing court not to credit Appellant with the time he served in jail prior to conviction because Appellant was not sentenced to a period of incarceration but instead was granted probation conditioned on serving six months in jail. We find it disingenuous to claim that incarceration in a jail is different when a person is sentenced to jail than when sentencing is deferred and a person is required to spend a period of time in jail as a condition of being placed probation. Precisely the same limits are placed on the liberty of an individual in either instance, requiring that the constitutional principles apply with equal force to any periods of confinement in correctional facilities.

■ In order to alleviate the apparent confusion regarding the circumstances in which a sentencing judge is required to credit a criminal defendant for the time spent in jail prior to conviction we hold. that, in furtherance of our ruling in *Martin v. Leverette*, the Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that time spent in jail before conviction shall be credited against all terms of incarceration in a correctional facility imposed in a criminal case as a punishment upon conviction when the underlying offense is bailable. Accordingly, we find in the case before us that the sentencing judge erred as a matter of law in not granting Appellant credit for the 119 days he spent in jail before being convicted and we remand the case for entry of an order providing the same.[6]

We are aware that it can be argued our insistence to afford constitutional protections to any period of pre-conviction confinement in a correctional facility will discourage the use of probation as an alternative sentence. However, we cannot ignore or minimize the protections furnished by our constitution based on such speculation. We choose instead to trust that circuit court judges will continue to wisely employ their discretion in determining the most appropriate punishment in each criminal case with due consideration to the array of alternative sentencing options available to them. Certainly, if credit given for time served nullifies the option of confinement in a correctional facility as a condition of probation, a sentencing judge could still examine the propriety of using home confinement, with or without electronic monitoring, or any other sentencing alternative appropriate to the circumstances of the case before the court.

## IV. Conclusion

For the foregoing reasons, the sentencing order of the Circuit Court of Kanawha County is reversed to the extent that it fails to provide credit for time served awaiting conviction, and the case is remanded for entry of an order consistent with this opinion.

Reversed, in part, and remanded.

DAVIS, Chief Justice, dissenting:

(Filed March 27, 2002)

In this criminal case, the defendant asserts that the circuit court was obligated to credit him for time served in jail pending his conviction. The circuit court declined to give the defendant such credit reasoning that the court had suspended *imposition* of the sentence and placed the defendant on probation with a condition of six months in jail. The majority opinion has determined that, because a condition of probation included six months confinement, the circuit court was constitutionally obligated to credit the defendant for time served pending his conviction. The majority opinion is fundamentally unsound. Therefore, I dissent.

### A. Suspending Imposition of a Sentence Versus Suspending a Sentence Imposed

The initial problem with the majority opinion is its failure to understand the procedural distinctions between suspension of the *impo-*

---

**6.** The sentencing court is reminded that under the circumstances of this case an increased pen- alty may not be imposed upon remand. *See State v. Eden*, 163 W.Va. 370, 256 S.E.2d 868 (1979).

*sition* of sentence, and suspension of a *sentence* imposed. Failure to understand these procedural differences is the reason for the majority's unsound conclusion in this case.

Suspension of imposition of sentence means that no sentence is imposed. Instead, the defendant is merely placed on probation. That is, the sentence is deferred and may never be imposed should the defendant successfully complete probation. In such a situation, should a defendant's probation subsequently be revoked, a sentencing hearing on the underlying conviction would then be required, and *at that time the sentencing order will give a defendant credit for any time previously served in jail pending trial.* By contrast, the suspension of a sentence imposed refers to the actual sentence. The sentence is actually imposed, but then the execution of the sentence is suspended and the defendant is placed on probation. In the latter situation, should a defendant's probation be revoked, no further sentencing hearing is required because the sentence has been previously imposed.[1] Trial courts generally defer granting credit for time served in jail pending trial when the trial court suspends imposition of a sentence. On the other hand, trial courts typically award a defendant credit for time served in jail pending trial when the court imposes a sentence, but then suspends it and places the defendant on probation.

In the case currently before the Court, the trial court's order stated:

It appearing to the satisfaction of the Court that the character of the defendant and circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the Court of its own motion doth suspend the imposition of sentence and doth release the defendant on probation.

The order makes abundantly clear that the trial court did not impose a sentence. Because of the disposition reached, the trial court, in the proper exercise of its discretion, did not grant the defendant credit for time served in jail prior to his conviction. This deferment does not mean that the defendant has been denied credit for preconviction jail time. It simply means that, if the defendant's probation is never revoked, he will need no credit for time served. To the contrary, should his probation be revoked, he will be given credit for preconviction jail time at the sentencing hearing following his probation revocation.

## B. Preconviction Jail Time Should Not be Credited to a Probationary Period of Confinement

In the preceding section, I have attempted to illustrate why the trial court was not required to give the defendant credit for time served in jail prior to his conviction. Nevertheless, I would not be so concerned with the majority opinion's disposition of this case if the opinion had limited itself to concluding that a trial court's order that suspends imposition of a sentence and places a defendant on probation must also give the defendant credit toward any future sentence imposed for time served in jail prior to the conviction.[2] Unfortunately, the majority opinion is not so limited. The havoc created by the majority opinion lies in the fact that it also requires trial courts to grant preconviction jail time credit toward any probationary sentence that carries a period of incarceration. For example, in this case the defendant will have 119 days of preconviction jail time credited against his six months probationary jail time. Such a conclusion by the majority is wrong and has no statutory or constitutional support.

The record is clear. The trial court did not sentence the defendant to incarceration for the offense for which he plead. Imposi-

---

1. *See* 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure*, 409 (2d ed. 1993) ("Suspension of sentence means either delay in the imposition of sentence for a crime or the staying of execution of the sentence imposed."); *State v. Duke*, 200 W.Va. 356, 364, 489 S.E.2d 738, 746 (1997) ("W.Va.Code § 62–12–3 specifies the discretionary nature of the circuit court's

authority to suspend either the imposition or execution of a sentence of incarceration and to place the defendant on a period of probation[.]").

2. Obviously, such a requirement is academic. The trial court could do this during sentencing subsequent to a probation revocation.

tion of the sentence was suspended. The defendant was placed on probation. Our cases have succinctly stated that "[p]robation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime." Syl. pt. 2, *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 165 S.E.2d 90 (1968). *See also State v. Ramsey*, 209 W.Va. 248, 257, 545 S.E.2d 853, 862 (2000) (per curiam) ("[P]robation is 'a matter of grace.' ") (citation omitted); *State v. Duke*, 200 W.Va. 356, 364, 489 S.E.2d 738, 746 (1997) ("We have recognized that probation is a privilege of conditional liberty bestowed upon a criminal defendant through the grace of the circuit court."). As a condition of probation, the trial court required the defendant to be confined in jail for six months. The authority for such a disposition is granted by W.Va. Code § 62–12–9(b)(4) (1994) (Repl.Vol.2000).[3]

Under the law of this State, a defendant who serves six months or less in a jail is not entitled to "good time credit" during the confinement. The Court addressed this very point in *State ex rel. Goff v. Merrifield*, wherein it was said:

[I]f a person is ordered to serve a period of confinement in the county jail as a condition of probation, that person cannot become eligible for good time credit, under W.Va.Code § 7–8–11 [1986], on that period of confinement alone.... [F]or a person to be eligible for good time credit under W.Va.Code § 7–8–11 [1986], that person

must be sentenced to the county jail for a period exceeding six months. Clearly, the legislature did not intend for a person incarcerated in the county jail for less than six months to receive good time credit.[4] 191 W.Va. 473, 478 n. 7, 446 S.E.2d 695, 700 n. 7 (1994) (footnote added). It is patently illogical to have a rule of law which prohibits granting "good time credit" to a defendant who is incarcerated for six months as a condition of probation, yet also have a purported constitutional rule of law requiring this same defendant be given credit on those six months for time served while awaiting conviction. Unfortunately, the majority opinion has created this patently illogical situation. Now, the trial courts must sadly live with the problem.[5]

In the final analysis, it is evident that the majority opinion had little understanding of its own rationale and has actually invaded the province of the legislature. It is for the legislature to determine and harmonize the issue of "good time credit" and credit for preconviction jail time in relation to confinement for six months as a condition of probation. Until the decision in this case, the legislature had harmonized this situation because neither "good time credit" nor credit for preconviction jail time were permitted under such circumstances.

### C. Discrimination Against Indigent Defendants

The majority opinion suggests that refusing to allow credit for preconviction jail time

3. W.Va.Code § 62–12–9(b)(4) (1994) (Repl.Vol. 2000) provides in relevant part:

(b) In addition the court may impose, subject to modification at any time, any other conditions which it may deem advisable, including, but not limited to, any of the following:

(4) That he or she, in the discretion of the court, be required to serve a period of confinement in the county jail of the county in which he or she was convicted for a period not to exceed one third of the minimum sentence established by law or one third of the least possible period of confinement in an indeterminate sentence, but in no case may the period of confinement exceed six consecutive months.

4. W.Va.Code § 7–8–11 (1994) (Repl.Vol.2000) reads as follows:

Every prisoner sentenced to the county jail for a term exceeding six months who, in the judg-

ment of the sheriff, shall faithfully comply with all rules and regulations of said county jail during his term of confinement shall be entitled to a deduction of five days from each month of his sentence.

5. The position taken in the Model Penal Code, § 301.1(3) is that the term of confinement imposed as a condition of probation should not be credited toward the service of a sentence upon revocation of probation. *See also Williams v. State*, 673 So.2d 873 (Fla.Dist.Ct.App.1996) (a defendant sentenced after revocation of probation is not entitled to credit against the sentence for jail time served as a condition of probation); *State v. Peterson*, 121 Idaho 775, 828 P.2d 338 (Ct.App.1992) (same); *People v. Rollins*, 166 Ill. App.3d 843, 117 Ill.Dec. 904, 520 N.E.2d 1255 (1988) (same); *People v. Jaynes*, 23 Mich.App. 360, 178 N.W.2d 558 (1970) (same); *State v. Sutherlin*, 341 N.W.2d 303 (Minn.Ct.App.1983) (same).

to be credited toward probationary confinement would discriminate against indigent defendants. The majority so concludes because, theoretically, an indigent defendant could be confined longer than the statutory penalty. This indigent-based discrimination claim is wrong.

To illustrate my point, I will examine the trial court's decision in this case in a different context. Assume that the defendant was able to make bail and did not accumulate any preconviction jail time. Let us further assume that the trial court suspended imposition of the defendant's sentence and placed the defendant on probation with a condition of confinement for six months. Moreover, let us assume this defendant served the six months confinement, but, after being released, violated probation. Subsequently, the trial court revoked probation and sentenced the defendant to the maximum allowable sentence of imprisonment which is three years. Under this hypothetical situation, the defendant does not have any preconviction jail time to use as credit toward the prison sentence. Therefore, the net result is that

this non-indigent defendant would have spent three years in prison and six months in jail.[6]

Had the defendant in this case not been granted preconviction jail time credit toward his probationary term of confinement, he would have been subjected to the same total period of confinement as the non-indigent defendant in the hypothetical situation described above. In other words, under the law as it existed prior to the majority opinion, both the indigent and non-indigent defendants would have been confined for a total of three years and six months.

The result of the majority opinion in this case, in essence, permits trial courts to use probationary confinement only against defendants who are able to post pretrial bail. The defendants who do not post pretrial bail will have preconviction jail time that will defeat imposition of probationary confinement. This antagonistic situation may force trial courts to sentence indigent defendants to jail rather than suspending their sentence. I submit that such a scheme as created by the majority opinion is wrong and contrary to

**6.** The appellate court in *State v. Dana*, No. 26007, 2001 WL 760973 (Idaho Ct.App. July 9, 2001), addressed the issue of a defendant being confined longer than the statutory period of imprisonment. In *Dana*, the defendant received two consecutive three year terms of imprisonment. The sentences were suspended and the defendant was placed on probation with 180 days in jail imposed as a condition thereof. After the defendant served the jail time his probation was revoked and he was ordered to serve the original sentences. On appeal, the defendant sought to have credit for the 180 days he spent in jail counted against his term of imprisonment. He pursued this relief on the theory that he would serve more confinement time than allowed for the offenses of which he was convicted. The appellate court, citing prior precedent, rejected the contention and held:

> Under our Supreme Court's [precedent], a period of incarceration served as a condition of probation is simply not a part of the defendant's penitentiary sentence. Applying that rationale, Dana has not been sentenced to a term exceeding the statutory maximum.

*Dana*, 2001 WL 760973, at *2.

Similarly, in *People v. Jaynes*, 23 Mich.App. 360, 178 N.W.2d 558 (1970), the defendant spent six months in jail as a condition of probation. The defendant's probation was later revoked and he was sentenced to two to five years imprisonment. On appeal, the defendant argued that he

should be given credit for time he spent in jail as a condition of his probation, otherwise he faced spending a total of five and a half years confinements which exceeded the statutory penalty. The appellate court rejected the argument and held:

> The plain and unambiguous language used in the ... controlling statutes clearly indicates a legislative intention to allow a court to impose the maximum penalty even though jail time has accumulated under a probationary order.

*Jaynes*, 178 N.W.2d at 559.

The soundness of the decisions in *Dana* and *Jaynes* is well-grounded in the fact that the legislatures of Idaho and Michigan created criminal statutes with imprisonment as a penalty, and also created statutes that allowed for confinement as a condition of probation. The Idaho and Michigan legislatures were aware that, in theory, a defendant could serve the maximum prison sentence in addition to any probationary jail time, but did not create an exception for this that would allow credit for the probationary jail time. This same situation exists in West Virginia. Our legislature has decided that it is appropriate for a defendant to serve a maximum prison sentence and probationary jail time. The majority opinion has exceeded its authority in this case and created an exception whereby an *indigent defendant* can escape serving a maximum prison sentence and probationary jail time.

what the legislature has deemed fair and appropriate.

For the above reasons, I dissent from the majority opinion. I am authorized to state that Justice Maynard joins me in this dissenting opinion.

STARCHER, Justice, concurring:

(Filed March 29, 2002)

In my judgment, the dissent is incorrect in asserting that the majority opinion is "fundamentally unsound."

The dissent delivers a dazzling dissertation on the difference between "suspending imposition of a sentence" and "suspending execution of a sentence that has been imposed." The dissent also eloquently elucidates the nature of probation as a "matter of grace" and a "privilege of conditional liberty," and adds an erudite explanation of "good time" as an act of legislative grace—in the intricacies of which this Court should not meddle.

From all this, the dissent concludes that "the majority opinion had little understanding of its own rationale and has actually invaded the province of the legislature;" pronouncing that henceforth only those sufficiently wealthy to obtain pre-conviction bail will not be put on probation.

All of this discourse, however, ignores the simple fact that being locked up in jail is the same whether one is locked up because he or she cannot make bail, or as a condition of probation. In both cases, the "privilege of conditional liberty" is not being enjoyed by the person who is locked up.

Thus if there must be no difference between the rich and the poor in our system of justice, and if the period of time for which one on probation may be locked up is strictly delimited by the Legislature, then the promise of equal treatment for rich and poor alike will only be fulfilled by giving credit for the time one is locked up in jail—before, during or after conviction.

To reiterate: being locked up is being locked up. The niceties of "suspending imposition of sentence" versus suspending a sentence, of "grace" and "privilege of conditional liberty," etc. are beside the point. If

the statutory limit of permissible incarceration for a person who is put on probation for a given crime is X days, then under the majority opinion a defendant who is locked up will not be locked up for more than that number of days. Under the reasoning of the dissent, it would depend on whether the defendant made bail. In this difference lies the fundamentally *sound* law that is announced by the majority opinion.

Personally and as a policy matter, I would favor giving circuit judges the flexibility to add "more jail time" to certain probationers—because I believe that such flexibility will encourage judges to use probation more. But the statutory prescription is clear, and it is not "fundamentally unsound" to adhere to the clear legislative directive.

Accordingly, I join the majority opinion.