704 S.E.2d 698

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**David Harold EILOLA, Defendant Below, Appellant.**

No. 35140.

Supreme Court of Appeals of West Virginia.

Submitted March 10, 2010.

Decided Nov. 18, 2010.

Concurring Opinion of Justice McHugh Nov. 23, 2010.

Dissenting Opinion of Chief Justice Davis Nov. 23, 2010.

Edward L. Bullman, Esq., Bullman and Bullman, Charleston, WV, for Appellant.

Darrell McGraw, Esq., Attorney General, Dawn E. Warfield, Esq., Deputy Attorney General, Charleston, WV, for Appellee.

BENJAMIN, Justice:

The instant action is before this Court upon the appeal of David Harold Eilola from a December 10, 2008, amended order of the Circuit Court of Kanawha County, which resentenced Appellant for purposes of appeal following his convictions for Attempted Murder in the First Degree, Malicious Assault, Arson in the Fourth Degree, Violation of a Domestic Violence Protective Order, and Domestic Battery. This Court granted Appellant's Petition for Appeal only as to Appellant's third assignment of error, regarding the proper application of credit for time served by Appellant prior to sentencing. Appellant contends that this Court's holding in *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), regarding credit for time served, should be reconsidered and reversed in part on equal protection grounds. The State agrees that the opinion should be reconsidered, for reasons discussed more fully herein. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the rulings of the Circuit Court of Kanawha County are reversed and remanded with directions.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On March 29, 2006, the Appellant was taken into custody. Being unable to post the "cash only" bond of $50,000, he has remained in custody since that time. On April 26, 2007, the Appellant was convicted of Attempted Murder in the First Degree, Malicious Assault, Arson in the Fourth Degree, Violation of a Domestic Violence Protective Order, and Domestic Battery. Subsequently, by order entered August 8, 2007, the circuit court imposed consecutive sentences of three to fifteen years for Attempted First Degree Murder; two to ten years for Malicious Assault; two years for Fourth Degree Arson; twelve months for Violation of a Domestic Violence Protective Order; and twelve months for Domestic Battery.[1] Because the Appellant had been incarcerated while awaiting trial, conviction and sentencing, the circuit court ordered that 495 days of credit for time served be applied to his sentence of three to fifteen years for Attempted First Degree Murder. On August 16, 2007, the circuit court prepared a certified penitentiary commitment order, setting the Appellant's effective sentencing date as March 29, 2006, to reflect the 495 days of credit for time served.

On August 21, 2007, the State filed a motion to correct the penitentiary commitment, stating:

The commitment is incorrect because the commitment attributes the defendant's credit for time served against the initial (parole eligibility) portion of the sentence in a manner inconsistent with the decisions of the West Virginia Supreme Court of Appeals in *State v. Middleton*, 220 W.Va.

---

1. Pursuant to the express provisions of the December 10, 2008, amended sentencing order, once the defendant completes his penitentiary sentences or is paroled, the defendant shall be remanded into the custody of the West Virginia Regional Jail and Correctional Facility Authority for service of the misdemeanor sentence.

89 [640 S.E.2d 152] (2006). Syllabus Point # 6 of the *Middleton* case states,

"Consistent with our decision in *Echard v. Holland,* 177 W.Va. 138, 351 S.E.2d 51 (1986), when a trial court awards credit for presentence incarceration to a defendant receiving consecutive sentences, the period of presentence incarceration must be credited against the aggregated maximum term of the consecutive sentences. To the extent that language in the decision of *State v. Scott,* 214 W.Va. 1, 585 S.E.2d 1 (2003), suggests a different allocation of presentence credit to consecutive sentences, it is disapproved."

Thus, the law requires that credit for time served in a consecutive sentence be credited against the aggregated maximum of the defendant's sentence. Simply, the 495 days credit for time served is reduced from the "back" end of the sentence, not the front. The West Virginia rule is consistent with the rule in Alaska, Colorado, Florida, Hawaii, Idaho, Illinois, Indiana, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Mexico, Oregon, North Carolina, North Dakota, Vermont, and Wisconsin. See, *Middleton,* supra, for list.

The parole eligibility of the defendant is calculated from the commitment and the effective sentence date. The commitment prepared by the Clerk is inconsistent with the controlling decisional law of this State.

WHEREFORE, the State of West Virginia asks that this Court void the prior commitment and require the issuance of a new commitment consistent with the controlling law of this State.

On November 21, 2007, the circuit court granted the State's motion directing that "the commitment shall be amended to reflect that the effective sentencing date and the actual sentencing date shall be the 6th day of August, 2007", and that "the defendant's credit for time served calculated at four hundred ninety-five (495) days shall be deducted from the maximum aggregated sentence by the Commissioner of Corrections[.]" Pursuant to this order, an Amended Commitment was certified to the Commissioner of Correc-

tions on December 20, 2007, reflecting an effective sentence date of August 6, 2007.

On March 13, 2008, Appellant was re-sentenced for purposes of appeal. He was re-sentenced again on October 15, 2008, and again by amended order entered December 10, 2008, in order to perfect the instant appeal, which reflects the circuit court's previous rulings regarding the effective sentence date and deduction of Appellant's credit for time served from the maximum aggregated sentence. It is from these sentencing orders that Appellant now appeals.

## II.

### STANDARD OF REVIEW

The sole assignment of error to be considered by this Court is whether refusing to give the Appellant credit for time served prior to conviction in calculating his parole eligibility date violates the constitutional guarantees of equal protection under the law. Generally, "[s]entences imposed by the trial court, if within statutory limits and if not based on some unpermissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982). However, where it is alleged that the circuit court has failed to impose a sentence consistent with the law, appellate review is warranted. "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997). We held more specifically in Syllabus point 1 of *State v. Head,* 198 W.Va. 298, 480 S.E.2d 507 (1996), that:

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and inter-

pretations of statutes and rules are subject to a *de novo* review.

With these principles in mind, we now turn to the issue before this Court.

## III.

## DISCUSSION

Herein, the Appellant contends, and the State agrees, that a portion of this Court's prior ruling in *State v. Middleton* should be reconsidered because it results in loss of credit on a sentence for periods of incarceration based solely upon one's economic status or lack of resources.[2] Appellant presents the following example to demonstrate how this Court's prior holding in *State v. Middleton* is problematic:

> Two identical twins, separated at birth, are raised in similar environments. Both have the same or similar educational, vocational, medical, psychological and criminal backgrounds. Both commit the same crime of breaking and entering of a non-dwelling with a potential sentence of 1–10 years in the penitentiary. Because of the fairness of the bail system, each has a bond set in the amount of $50,000 with the option of posing 10% cash. Both have trial dates that for whatever reason results in sentencing one year from the date of arrest. The first individual cannot make bond and spends one year in confinement before trial and sentencing. The second brother has a girlfriend who the week before his arrest buys the winning lottery ticket winning the $5,000 necessary to post her boyfriend's bond. Both are sentenced on the same day to 1–10 years. Both are model inmates and make parole the first time they are eligible. The first brother has spent two years confinement based upon the same facts as his sibling who happened to be dating a lucky lottery winner.

By giving Appellant 495 days credit for time served on the back end of his sentence instead of the front end, the Appellant contends that he effectively received no credit for time served for the purposes of calculat-

ing his parole eligibility date, thus violating the constitutional guarantee of equal protection under the law. Appellant asserts, and the State agrees, that "confinement is confinement whether it is spent in the custody of the Department of Corrections or in the custody of the Regional Jail system." However, under the current formula for calculating presentence credit, "two individuals similarly situated are subjected to different punishments for the same criminal conduct based solely upon economic status if one is unable to make bail."

West Virginia Code § 61–11–24 (1923) provides:

> Whenever any person is convicted of an offense in a court of this State having jurisdiction thereof, and sentenced to confinement in jail or the penitentiary of this State, or by a justice of the peace having jurisdiction of the offense, such person may, in the discretion of the court or justice, be given credit on any sentence imposed by such court or justice for the term of confinement spent in jail awaiting such trial and conviction.

 Our prior decisions have modified the statute to the extent that it gives a trial court discretion to refuse to award a defendant credit for presentence jail time. *See Martin v. Leverette*, 161 W.Va. 547, 244 S.E.2d 39 (1978). Indeed, because of the fundamental constitutional rights involved, this Court has held that the granting of presentence credit is in fact mandatory:

> "The Double Jeopardy and Equal Protection Clauses of the West Virginia Constitution require that time spent in jail before conviction shall be credited against all terms of incarceration to a correctional facility imposed in a criminal case as a punishment upon conviction when the underlying offense is bailable."

Syl. Pt. 6, *State v. McClain*, 211 W.Va. 61, 561 S.E.2d 783 (2002). We have further held:

---

**2.** This Court acknowledges the candor and professionalism of the Attorney General's office in briefing this matter, as the State had the difficult task of advancing a position contrary to that

argued below in an attempt to correct the obvious errors involved in the sentencing of the Appellant.

The equal protection argument runs on the premise that an invidious discrimination based on wealth occurs where the indigent defendant, unable to obtain bail, stays in jail, while his wealthier counterpart is free on bond and, receiving the same ultimate sentence, will have served less total time since he had no jail time.

*Martin v. Leverette,* 161 W.Va. 547, 550, 244 S.E.2d 39, 41(*citing Durkin v. Davis,* 538 F.2d 1037 (4th Cir.1976)). We further elaborated on the fundamental constitutional underpinning of this important principle:

> Constitutional protections are implicated because a person who is unable to make bail will be incarcerated before trial. If such person is not given credit for the jail time, a longer period of incarceration will occur than for the person who commits the same offense but is released on pretrial bail.

*State ex rel. Roach v. Dietrick,* 185 W.Va. 23, 25 n. 5, 404 S.E.2d 415, 417 n. 5 (1991).

While we have addressed the concern about inequity in the treatment of economically disadvantaged inmates, we have been careful to state that consideration of a date for parole eligibility is simply that; it is no more than that. In other words, an inmate becomes eligible for parole on that date, but parole is not guaranteed. Thus, an inmate becomes entitled to parole consideration if he or she has served the requisite portion of his or her sentence. West Virginia Code § 62–12–13(b)(1)(A) (2006) provides, in relevant part:

> "Any inmate of a state correctional center is eligible for parole if he or she ... [h]as served the minimum term of his or her indeterminate sentence, or has served one fourth of his or her definite term sentence, as the case may be ... "

■ Parole is not a right, and eligibility for parole does not guarantee the defendant's release from prison. *State v. Scott,* 214 W.Va. 1, 7, 585 S.E.2d 1, 7 (2003). *See also State v. Lindsey,* 160 W.Va. 284, 291 233 S.E.2d 734 738–39 (1977)("One convicted of a crime and sentenced to the penitentiary is never *entitled* to parole."); *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 536, 276 S.E.2d 205, 213 (1981)("[T]here is no automatic right to parole once the prisoner crosses the threshold of eligibility.")

■ Eligibility for consideration of parole, however, is entitled to certain constitutional protections. *See Adkins v. Bordenkircher,* 164 W.Va. 292, 296, 262 S.E.2d 885, 887 (1980)("Parole eligibility is another facet of penal law scrutinized under the Ex Post Facto Clause.") In Syl. Pt. 6, *State v. Scott,* 214 W.Va. 1, 585 S.E.2d 1, this Court recognized that the opportunity to appear before the Parole Board is a significant right that should be protected:

> Where a criminal defendant has been placed on probation after successfully completing a program of rehabilitation at a young adult offender center under the Youthful Offenders Act, W. Va.Code, 25–4–1 to –12, and such probation is subsequently revoked, pursuant to W. Va.Code, 25–4–6 [2001] the circuit court's sentencing order must credit the defendant with time spent in incarceration in such a manner that the defendant's date of eligibility for parole is the same as if the defendant had not been committed to a young adult offender center and subsequently placed on probation.

*Id.* Thus, in *Scott,* we acknowledged that the time an inmate spends incarcerated should be credited toward the inmate's parole eligibility date. *Id.* (overruled in part).[3]

This Court has issued three opinions addressing the issue of crediting presentence confinement time to consecutive sentences. In *Echard v. Holland,* 177 W.Va. 138, 351 S.E.2d 51 (1986), this Court evaluated the issue of whether a prisoner was entitled to have "good time" deducted from each of two consecutive sentences he was serving.[4] This Court found that the defendant was not entitled to have "warden's good time" and "overtime good time" earned by him deducted

---

**3.** We discuss *State v. Scott* in greater detail *infra.*

**4.** In *Echard,* the defendant was convicted and sentenced separately for crimes committed in

Wood County and Ritchie County. The Wood County sentencing order required that the sentences be served consecutively.

from each of two consecutive sentences he was then serving. Rather, the defendant was only entitled to take a deduction once from the total maximum sentence. Therein, this Court stated:

> In cases of consecutive sentences, West Virginia Code § 28-5-27(e) requires that good time shall be allowed to the inmate as if the consecutive sentences, when the maximum terms are added together, were one sentence. The maximum terms of the consecutive sentences, determinate or indeterminate, must first be added together to determine the inmate's maximum discharge date. It is from this maximum discharge date that all *presentence* and good time deductions must be made in order to establish the inmate's *minimum discharge date*.

*Echard,* 177 W.Va. at 143, 351 S.E.2d at 56–57 (Emphasis added).

Subsequently, in *State v. Scott,* 214 W.Va. 1, 585 S.E.2d 1, this Court again addressed presentence crediting issues in a case wherein the defendant pled guilty to the charge of uttering and to transporting drugs into a jail, and was sentenced to one to ten years on the uttering charge, and one to five years for transporting drugs into a jail. *Id.* at 4, 585 S.E.2d at 4. The sentences were ordered to be served consecutively. However, because the defendant was a youth at the time of the crimes, the sentences were suspended and the defendant was placed in a rehabilitation program at the Anthony Correctional Center. After spending over a year at the Anthony Center, the defendant was released and placed on probation. Because the defendant eventually violated probation, he was ordered to serve his previously suspended sentences. The order committing the defendant to prison also granted him credit for the time spent confined at the Anthony Center and for the time he was briefly incarcerated after each of his two arrests, which amounted to a total of 567 days. The trial court's order required 565 days of the previous confinement to be credited toward the uttering charge and only two days credited toward the drug transportation charge. Further, the order imposed the credit for time served on the maximum term of each sentence.

The defendant appealed the sentencing order and argued that the credit for time served should have been apportioned between the two consecutive sentences imposed by the circuit court, and that the credit for time served should be deducted from the minimum terms of incarceration, not the maximum. This Court held in Syllabus Point 6 that:

> Where a criminal defendant has been placed on probation after successfully completing a program of rehabilitation at a young adult offender center under the Youthful Offenders Act, W. Va.Code, 25–4–1 to –12, and such probation is subsequently revoked, pursuant to W. Va.Code, 25–4–6 [2001] the circuit court's sentencing order must credit the defendant with time spent in incarceration in such a manner that the defendant's date of eligibility for parole is the same as if the defendant had not been committed to a young adult offender center and subsequently placed on probation.

*Id.,* Syl. Pt. 6.

However, in footnote 11 of the majority opinion, it stated: "[t]he simplest way to correct the order might be to allocate 365 days toward the first, uttering count, and the remaining 202 days toward the transporting count." *Id.* at 9 n. 11, 585 S.E.2d at 9 n. 11. Justice Davis dissented from the majority opinion in *Scott.* In her separate opinion, to which Justice Maynard joined, in part, Justice Davis argued that the majority opinion was inconsistent with controlling law in *Echard v. Holland,* and that the majority opinion attempted to overrule existing law through a footnote. Specifically, Justice Davis wrote that Syllabus Point 6 in the opinion failed to explain exactly how credit for time served should be awarded, and that the rule in *Echard* should have been applied. She stated that: "[s]ince no statute actually addressed how to distribute credit for time served prior to sentencing, the Court in *Echard* applied the formulation used in the good time credit statute." *Id.* at 10 n. 5, 585 S.E.2d at 10 n. 5.

Following this Court's decision in *Scott,* this Court attempted to resolve the tension between *Echard* and *Scott* in *State v. Middle-*

*ton,* 220 W.Va. 89, 640 S.E.2d 152. In *Middleton,* the Appellant sought to have pre-trial incarceration time credited to both of his consecutive sentences. This Court held in Syllabus Point 6 that:

Consistent with our decision in *Echard v. Holland,* 177 W.Va. 138, 351 S.E.2d 51 (1986), when a trial court awards credit for presentence incarceration to a defendant receiving consecutive sentences, the period of presentence incarceration must be credited against the *aggregated maximum term of the consecutive sentences.* To the extent that language in the decision of *State v. Scott,* 214 W.Va. 1, 585 S.E.2d 1 (2003) suggests a different allocation of presentence credit to consecutive sentences, it is disapproved.

*Id.* (Emphasis added). Specifically, the opinion stated that it disapproved of any interpretation of *Scott* that would permit "apportionment or outright duplication of credit for presentencing jail time, and *allocation of presentence jail time credit to the minimum terms of consecutive sentences.*" 220 W.Va. at 106, 640 S.E.2d at 169 (emphasis added). Because our presentence credit statute, W. Va.Code § 61–11–24, is silent as to how credit for presentencing jail time is to be allocated when sentences are required to run consecutively, this Court explained the construction of the presentence credit statute under the doctrine of *in pari materia,* stating that "statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." 220 W.Va. at 106–07, 640 S.E.2d at 169–70. Based upon this principle, the Court then stated that "[w]e believe the Legislature intended to harmonize the allocation of credit for presentence jail time under W. Va.Code § 61–11–24 with the allocation of good time credit under W. Va.Code § 28–5–27 (1984) (Repl.Vol.2004)." 220 W.Va. at 107, 640 S.E.2d at 170.[5] In arriving at this conclusion, the Court noted that "courts of other jurisdictions ... have uniformly held that, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed[.]" 220 W.Va. at 107, 640 S.E.2d at 170 (*quoting Endell v. Johnson,* 738 P.2d 769, 771 (Alaska Ct.App.1987); *Accord State v. Cuen,* 158 Ariz. 86, 761 P.2d 160, 161 (1988); *Schubert v. People,* 698 P.2d 788, 795 (Colo.1985); *Barnishin v. State,* 927 So.2d 68, 71 (Fla.Dist.Ct.App.2006); *State v. Tauiliili,* 96 Hawai'i 195, 29 P.3d 914, 918 (2001); *State v. Hoch,* 102 Idaho 351, 630 P.2d 143, 144 (1981); *People v. Latona,* 184 Ill.2d 260, 234 Ill.Dec. 801, 703 N.E.2d 901, 907 (1998); *Payne v. State,* 838 N.E.2d 503, 510 (Ind.Ct.App.2005); *Commonwealth v. Carter,* 10 Mass.App.Ct. 618, 411 N.E.2d 184, 186 (1980); *People v. Watts,* 186 Mich.App. 686, 464 N.W.2d 715, 716 (1991); *State v. Anderson,* 520 N.W.2d 184, 187 (Minn.Ct.

---

**5.** "[T]he accumulation of good time is dependent upon the prisoner's behavior or 'good conduct' while incarcerated." *State ex rel. Gordon v. McBride,* 218 W.Va. 745, 749, 630 S.E.2d 55, 59 (2006). Pursuant to W. Va.Code § 28–5–27(e), good time credit is deducted from the *aggregate maximum term of consecutive sentences.* W. Va. Code § 28–5–27(e) (1984) provides that "[a]n inmate under two or more consecutive sentences shall be allowed good time as if the several sentences, when the maximum terms thereof are added together, were all one sentence." The application of good time to an inmate's sentence is then used to calculate his or her minimum discharge date pursuant to subsection (g) of the statute:

Each inmate, upon his or her commitment to and being received into the custody of the commissioner of the department of corrections, or upon his return to custody as the result of violation of parole pursuant to section nineteen, article twelve, chapter sixty-two of this code, shall be given a statement setting forth the term or length of his or her sentence or sentences and the time of his minimum discharge computed according to this section. W. Va.Code § 28–5–27(g) (1984) (Emphasis added).

West Virginia Code § 28–5–27(c) (1984) provides:

Each inmate committed to the custody of the commissioner of corrections and incarcerated in a penal facility pursuant to such commitment shall be granted one day good time for each day he or she is incarcerated, including any and all days in jail awaiting sentence and which is credited by the sentencing court to his or her sentence pursuant to section twenty-four, article eleven, chapter sixty-one of this code or for any other reason relating to such commitment. No inmate may be granted any good time for time served either on parole or bond or in any other status whereby he or she is not physically incarcerated.

App.1994); *State v. Riley*, 761 S.W.2d 745, 746 (Mo.Ct.App.1988); *State v. Sanchez*, 2 Neb.App. 1008, 520 N.W.2d 33, 36 (1994); *State v. Decker*, 127 N.H. 468, 503 A.2d 796, 797 (1985); *State v. Miranda*, 108 N.M. 789, 779 P.2d 976, 979 (1989); *Nissel v. Pearce*, 307 Or. 102, 764 P.2d 224, 228 (1988); *State v. Richardson*, 295 N.C. 309, 245 S.E.2d 754, 760–61 (1978); *State v. Arcand*, 403 N.W.2d 23, 24 (N.D.1987); *State v. Percy*, 158 Vt. 410, 612 A.2d 1119, 1127 (1992); *State v. Wolfe*, 242 Wis.2d 426, 625 N.W.2d 655, 657 (2001)).

In the case *sub judice*, the State submits that none of our statutes nor the *Echard* opinion itself mandate that presentence credits granted pursuant to W. Va.Code § 61–11–24 be deducted only from the aggregate maximum term of consecutive sentences in calculating the inmate's parole eligibility date under W. Va.Code § 62–12–13(b)(1)(A). The State believes that the dissenting opinion in *Scott* was the first to suggest that *Echard* created a formula for determining how good time credit must be distributed when consecutive sentences are imposed.[6] However, the State contends that the calculation of credit for time served for the purpose of determining a parole eligibility date was not an issue in *Echard*, and the decision did not result in a new point of law regarding the application of presentence credits to consecutive sentences. *See* Syl. Pt. 2, in part, *Walker v. Doe*, 210 W.Va. 490, 558 S.E.2d 290 (2001)("New points of law ... will be articulated through syllabus points as required by

our state constitution.") Syllabus Point 2 of *Echard* states: " 'An inmate under two or more consecutive sentences shall be allowed good time as if the several sentences, when the maximum terms thereof are added together, were all one sentence.' W. Va.Code § 28–5–27(e) (Cum.Supp.1986)." 177 W.Va. 138, 351 S.E.2d 51. Thus, the State argues that the *Echard* opinion only dealt with the proper method of calculating an inmate's *minimum discharge date*, and nothing further. The State also submits that the proper method of applying credit for time served to consecutive sentences for determining a parole eligibility date was not presented in *Middleton* either. Rather, the Appellant in *Middleton* improperly sought to have pretrial incarceration time credited to both of his consecutive sentences. The State contends that Syllabus Point 6 of *Middleton* elevated the *Echard* decision to a rule of law in a manner inconsistent with its original holding.

The State also asserts that while this Court accurately observed in *State v. Middleton* that courts of other jurisdictions have indeed uniformly held that periods of presentence incarceration may be credited only against the *aggregate of all terms imposed*, the cases cited in *Middleton* merely stand for the proposition that inmates receive only one credit for time served on consecutive sentences, not that such credit must be applied only to the *aggregate maximum sentence*.[7] Appellant has clarified that he is not

---

**6.** "Since no statute actually addressed how to distribute credit for time served prior to sentencing, the Court in *Echard* applied the formulation used in the good time credit statute." *State v. Scott*, 214 W.Va. at 10 n. 5, 585 S.E.2d at 10, n. 5 (Davis, J. dissenting).

**7.** The State persuasively points out that the complete quote from the *Endell* opinion cited in *Middleton* sheds more light on the instant issue. It reads as follows:

[C]ourts of other jurisdictions, construing similar credit-for-time-served statutes, have uniformly held that, when consecutive sentences are imposed for two or more offenses, periods of presentence incarceration may be credited only against the aggregate of all terms imposed: *an offender who receives consecutive sentences is entitled to credit against only the first sentence imposed, while an offender sen-*

*tenced to concurrent terms in effect receives credit against each sentence.*

738 P.2d at 771 (emphasis added). Thus, *Endell* appears to simply stand for the proposition that a defendant may only receive one credit for time served on consecutive sentences; it does not state that such credit must be applied only to the aggregate maximum sentence.

After thoroughly reviewing the authorities cited in *Middleton*, we agree with the State's analysis of these cases and find that none of these other jurisdiction's holdings expressly mandate that presentence credit be applied to the aggregate maximum sentence. Rather, these cases simply seem to stand for the proposition that a defendant should only receive one credit for time served on consecutive sentences. *See, e.g., State v. Tauiliili*, 29 P.3d at 918 (statute required that presentence credit be applied to both the minimum and maximum imprisonment terms; "Once credit has been granted, no additional purpose is

seeking apportionment or duplication of credit for time served; it is merely *Middleton's* statement that the Court disapproves of permitting *"allocation of presentence jail time credit to the minimum terms of consecutive sentences"* that Appellant believes creates the equal protection problem by delaying his minimum parole eligibility date. Appellant urges this Court to consider how to harmonize the allocation of credit for presentence jail time under W. Va.Code § 61–11–24 and the allocation of good time credit under W. Va.Code § 28–5–27 with the minimum parole eligibility requirements of W. Va.Code § 62–12–13(b)(1)(A). In assessing these statutes, the State asserts that "[i]t is clear that under W. Va.Code § 28–5–27 good time credit may be earned while serving a prison sentence and while in jail awaiting sentencing." *State v. Middleton,* 220 W.Va. at 107, 640 S.E.2d at 170. Thus, before an inmate may be granted good time credit for time served in jail awaiting sentencing, any credit for time served which is granted pursuant to W. Va.Code § 61–11–24 has to first be deducted from the aggregate terms of consecutive sentences before applying any good time credits in order to arrive at the inmate's minimum discharge date.

Furthermore, the State asserts that good time credits may be forfeited for rule violations pursuant to subsection (f) of the statute,[8] and the inmate's minimum discharge date recalculated pursuant to subsection (h).[9] By contrast, credit for time served in jail awaiting trial and sentencing pursuant to W. Va.Code § 61–11–24 does not change; it has already been served and has been credited to the inmate's sentence by the circuit court's sentencing order. Thus, the State contends it would be logical to include presentence jail time in calculating the total period of incarceration to arrive at the inmate's parole eligibility date pursuant to W. Va.Code § 62–12–13(b)(1)(A).

■■■ Upon examination of the statutory framework of W. Va.Code § 61–11–24 regarding credit for presentence jail time, and W. Va.Code § 28–5–27 regarding good time credit, we find that this Court's prior statement that the Legislature must have intended to harmonize the application of the allocation of credit for presentence jail time with the allocation of good time credit was indeed incorrect. While both "credit for time served" and "good time credit" will ultimately determine the amount of time a defendant serves on a sentence, each type of credit serves a separate and distinct purpose. As this Court recognized in Syllabus Point 6 of *State v. McClain,* 211 W.Va. 61, 561 S.E.2d 783, a defendant is constitutionally entitled to credit for time served. However, a defendant is not constitutionally entitled to good time credit. Rather, pursuant to W. Va.Code

served by granting a second or 'double credit' against a later consecutive sentence."); *State v. Hoch,* 630 P.2d at 144 (defendant was not entitled to credit for time served prior to convictions against each of the two burglary convictions he received; "We find no intent of the legislature that a person so convicted should have that credit pyramided simply because he was sentenced to consecutive terms for separate crimes."); *People v. Watts,* 464 N.W.2d at 716("[A] defendant who has received a consecutive sentence is not entitled to credit against the subsequent sentence for time served. Rather any credit for time served should be applied against the first sentence."); *State v. Arcand,* 403 N.W.2d at 24 ("jail credit should be applied only to the first of consecutive sentences, because to do otherwise would constitute double credit.").

8. W. Va.Code § 28–5–27(f) (1984):

The commissioner of corrections shall promulgate separate disciplinary rules for each institution under his control in which adult felons are incarcerated, which rules shall describe acts which inmates are prohibited from committing, procedures for charging individual inmates for violation of such rules and for determining the guilt or innocence of inmates charged with such violations and the sanctions which may be imposed for such violations. A copy of such rules shall be given to each inmate. For each such violation, by an inmate so sanctioned, any part or all of the good time which has been granted to such inmate pursuant to this section may be forfeited and revoked by the warden or superintendent of the institution in which the violation occurred. The warden or superintendent, when appropriate and with approval of the commissioner, may restore any good time so forfeited.

9. W. Va.Code § 28–5–27(h) (1984) provides:

Each inmate shall be given a revision of the statement described in subsection (g) if and when any part or all of the good time has been forfeited and revoked or restored pursuant to subsection (f) whereby the time of his or her earliest discharge is changed.

§ 28–5–27(f), the award of good time credit is at the discretion of the warden. Thus, this Court's prior statement that the Legislature must have intended to harmonize the application of these two very distinct aspects of calculating a sentence was simply incorrect.

The parole statute, W. Va.Code § 62–12–13(b)(1)(A) (2006) provides, in relevant part:

"Any inmate of a state correctional center is eligible for parole if he or she . . . [h]as served the minimum term of his or her indeterminate sentence, or has served one fourth of his or her definite term sentence, as the case may be . . ."

The statute does not expressly exclude the presentence time served to which the defendant is entitled from the consideration of how much time has been served. Similarly, the rules and regulations promulgated by the Parole Board pursuant to W. Va.Code § 62–12–13(g) simply state that: "[i]f the inmate is serving an indeterminate sentence, he or she must have served the minimum term of the sentence." W. Va. CSR § 92–1–4.1.1.a. Moreover, the title of W. Va. CSR § 92–1–4.1 simply states "Eligibility Based on Time Served." Because nothing in these rules or regulations expressly excludes credit for time served pretrial from the calculation of time served for purposes of establishing parole eligibility, we find that such time should be included in determining whether a defendant has served the minimum term of the sentence.[10]

Furthermore, in footnote 25 of *Middleton,* this Court contemplated an alternative construction of the statutes, finding that

A defendant would have his/her "good time" earned during "presentence incarceration" allocated to the aggregate maximum term of consecutive sentences, as required by W. Va.Code § 28–5–27; while the "actual" presentence incarceration time would be apportioned between the minimum confinement periods of consecutive sentences, as implicitly suggested by *Scott.* We do not believe the Legislature intended to have presentence incarceration "good time" and presentence "actual time served" allocated in such an irrational manner. Moreover, as pointed out by the dissenters in *Scott,* allocating "actual" presentence incarceration time to the minimum terms of consecutive sentences would allow many defendants to be eligible for parole before they have served a full day in prison. Clearly the Legislature did not intend these results.

220 W.Va. at 107, 640 S.E.2d at 170. However, as the State correctly contends, W. Va. Code § 62–12–13(f)[11] clearly contemplates that a defendant may have served his or her total minimum sentence prior to being transferred to a state correctional center. When read together, these sections of the Code clearly imply that time served at a regional jail prior to sentencing does, in fact, count towards the minimum sentence that must be served to become eligible for a parole hearing.[12]

---

**10.** In addition to relevant West Virginia statutory provisions, we also find the provisions of the Model Penal Code persuasive on this issue. Section 7.09 of the Model Penal Code, entitled "Credit for Time of Detention Prior to Sentence; Credit for Imprisonment Under Earlier Sentence for Same Crime" provides:

(1) When a defendant who is sentenced to imprisonment has previously been detained in any state or local correctional or other institution following his [conviction of] [arrest for] the crime for which such sentence is imposed, such period of detention following his [conviction] [arrest] shall be deducted from the maximum term, and from the minimum, if any, of such sentence. The officer having custody of the defendant shall furnish a certificate to the Court at the time of sentence, showing the length of such detention of the defendant prior to sentence in any state or local correctional or other institution, and the certificate shall be

annexed to the official records of the defendant's commitment.

\* \* \*

MODEL PENAL CODE § 7.09 (Am. Law Inst.1962).

**11.** W. Va.Code § 62–12–13(f) provides:

Any person serving a sentence on a felony conviction who becomes eligible for parole consideration prior to being transferred to a state correctional center may make written application for parole. The terms and conditions for parole consideration established by this article apply to such inmates.

**12.** In addition to examining pertinent statutory authority regarding this matter, we also observe that the parties have both cited persuasive authority regarding the calculation of presentence credit. For example, the United States District Court for the Southern District of Ohio has rec-

■ In the case *sub judice*, Appellant was sentenced to indeterminate terms of 3–15 years in the penitentiary on Count One and 2–10 years on Count 2; and a determinate sentence of 2 years on Count 3 [13]; followed by 12 months in jail for each of Counts 4 and 5.[14] These sentences were set to run consecutively; thus, his effective penitentiary sentence is 6–27 years, and Appellant's time served (495 days) should be credited against the 6–year minimum in calculating his parole eligibility date. As suggested by the parties, there is no need to apportion the credit among Appellant's various sentences; the time served credit applies to the total effective sentence, not separately to each component of the sentence. Because the effect of the circuit court's ruling upon the Appellant would require an additional period of confinement of almost 1 ½ years before his parole eligibility date, we think it constitutionally appropriate that one credit for time served should be applied to the aggregate minimum terms of all consecutive sentences combined. Thus, the circuit court's effective sentencing date should be adjusted to March 29, 2006, the date Appellant was first incarcerated on these charges while awaiting trial, to give him credit for 495 days toward his parole eligibility date.

Furthermore, to correct the apparent confusion caused in our prior opinions in *Scott*, *Echard* and *Middleton*, and to resolve the issue presented by the Appellant for future cases, we now expressly hold that for purposes of calculating a defendant's parole eligibility date, credit for time served by the defendant prior to being sentenced should be applied to the aggregate minimum term of all the consecutive sentences combined. To the extent that language in *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), mandates that the period of time served during presentence incarceration be credited only against the aggregated maximum term of the consecutive sentences, it is hereby overruled.

## IV.

## CONCLUSION

For the reasons stated above, the December 10, 2008, amended sentencing order of the Circuit Court of Kanawha County is hereby reversed and remanded with directions to adjust the Appellant's effective sentencing date to March 29, 2006, the date Appellant was first incarcerated on these charges while awaiting trial, to give him credit for 495 days toward his parole eligibility date.

**Reversed and Remanded.**

Justice McHUGH concurs and reserves the right to file a concurring opinion.

Chief Justice DAVIS dissents and reserves the right to file a dissenting opinion.

---

ognized the credit for presentence detention has a dual effect. In addition to the earlier expiration of a sentence, the credit for time served also results in an earlier parole eligibility date. *White v. Gilligan*, 351 F.Supp. 1012 (S.D.Ohio 1972). Otherwise, indigent defendants are confined for longer periods of time before their parole eligibility date than similarly situated inmates who have the resources to post bond and to remain free until after their trials. *Id.* Additionally, the Supreme Court of Wisconsin requires credit be given both for time served on expiration of sentence and for parole eligibility. *See Wilson v. State*, 82 Wis.2d 657, 264 N.W.2d 234 (1978). If a defendant does not receive credit for time for pre-trial incarceration in determining a parole eligibility date, "a person financially unable to make bail would be required to serve a longer period of incarceration to be eligible for parole than a non-indigent prisoner who is bailed pending conviction." *Id.* at 236.

In addition, the Fourth Circuit in *Vickers v. Haynes*, 539 F.2d 1005, 1006 (4th Cir.1976)(per curiam) held that a West Virginia prisoner was entitled to full credit for all time spent in pretrial custody on a nonbailable offense, noting: "Although Vickers was given a life sentence, the jury's recommendation of mercy makes him eligible for parole. Credit for preconviction jail time will advance the date upon which he will first be eligible for parole." *Id.*

13. W. Va.Code § 61-3-4 (1997), the fourth degree arson statute, provides that "[a] person imprisoned pursuant to this section is not eligible for parole prior to having served a minimum of one year of his or her sentence."

14. As previously stated, pursuant to the express provisions of the December 10, 2008, amended sentencing order, once the defendant completes his penitentiary sentences or is paroled, the defendant shall be remanded into the custody of the West Virginia Regional Jail and Correctional Facility Authority for service of the misdemeanor sentence.

McHUGH, Justice, concurring:

(Filed Nov. 23, 2010)

I agree with the holding of the majority opinion and concur only to address an aspect of the application of credit for time served to multiple indeterminate consecutive sentences that is necessary to a comprehensive understanding of the issue. As the majority opinion states, for purposes of determining parole eligibility, it is appropriate to apply the credit for prior time served to the aggregated minimum term of the multiple indeterminate consecutive sentences. In calculating the entirety of the aggregate term to be served, however, the ultimate result should be emphasized. In this case, the Appellant was entitled to 495 days of prior time served. Thus, the effective sentencing date was determined to be March 29, 2006, which is 495 days prior to the actual sentencing date of August 8, 2007. By altering the sentencing date in such manner, the Court is effectively crediting the time served against both the minimum aggregate sentence and the maximum aggregate sentence to establish a new term of incarceration which accurately reflects the time period during which the individual has already been incarcerated. This method does not provide double credit for the prior time served; it simply adjusts the aggregate term to acknowledge the prior time served. The duration of the aggregate sentence remains the same.

This result is consistent with jurisdictions which arrive at the same outcome, through application of statute or otherwise, by crediting the prior incarceration time against both the minimum and maximum sentence. *See State v. Tauiliili*, 96 Hawai‘i 195, 29 P.3d 914, 917 (Hawaii 2001) ("The statutory language read in the context of the entire statute requires that presentence credit be applied to both the minimum and maximum imprisonment terms. In computing the terms of imprisonment, the circuit court properly applied Tauiliili's presentence credit by deducting 853 days from both the minimum and maximum terms of his sentence. In its brief, the prosecution concedes that, pursuant to HRS § 706–671, credit for time served must be applied against the minimum term, as well as the maximum term of imprisonment."); *Edwards v. Travis*, 22 A.D.3d 899, 802 N.Y.S.2d 519, 520 (N.Y.A.D.2005) (finding that "parole eligibility and maximum expiration dates were properly calculated by crediting the 694 days against both the minimum and maximum sentences. . . ."); *Abitbol v. State*, 178 P.3d 415 (Wyo.2008); *Doolittle v. State*, 154 P.3d 350 (Wyo.2007).

The purpose of this computation is to attempt to place an in-custody criminal defendant unable to afford bail in the same position as his counterpart who has the financial means to post bail. *Nissel v. Pearce*, 307 Or. 102, 764 P.2d 224 (Or.1988).

Statutes giving credit for presentence time served were designed to ensure equal treatment for indigent and non-indigent defendants. An example will illustrate this point. Suppose that codefendants *A* and *B* commit a felony together. While they are awaiting trial, *A,* who has access to money, bails himself out of jail. But *B,* who is indigent, is unable to post security and spends 180 days in jail before conviction. Both receive a two year prison term. If *B* is not credited for the 180 days spent in presentence confinement, she will spend two years and 180 days in custody while *A* will spend only two years so confined.

764 P.2d at 225–26 (footnote omitted). Similarly, in *Dewees v. State*, 444 N.E.2d 332 (Ind.App.1983), the court explained that credit for presentence time served was premised upon double jeopardy and equal protection guarantees. "The end result is that a defendant, because of time spent in jail awaiting trial, will not serve more time than the statutory penalty for the offense, and will not serve more time than a defendant who has the good fortune to have bail money." 444 N.E.2d at 334; *see also* Neb. Rev. St. § 83–1,106(1) (1988); Ohio Adm.Code 5120–2–04(G) (2008).

Although the majority opinion does not explicitly state that the prior time served is being credited against both the minimum and maximum aggregate terms in the present case, that is the ultimate effect of shifting the period of potential incarceration by establishing an effective sentencing date of 495 days prior to the actual sentencing date.

DAVIS, C.J., dissenting:

(Filed Nov. 23, 2010)

In this case the defendant, through acts of domestic violence and terror, cut his wife's throat, stabbed her in the face and other parts of her body, poured kerosene over her entire body, and attempted to set her on fire. As a result of the savage crimes committed against the victim, the trial court sentenced the defendant to consecutive terms of imprisonment that totaled not less than 9 nor more than 15 years imprisonment. Under this Court's decision in *State v. Middleton*, 220 W.Va. 89, 640 S.E.2d 152 (2006), the defendant would not be eligible for parole until after he served 9 years in prison, even though he had almost two years of pretrial incarceration. The majority opinion has unwisely chosen to overrule *Middleton* so that the defendant will be eligible for parole after serving roughly 7 years. In this regard, the majority opinion overruled *Middleton* because that opinion would allow the defendant to be eligible for parole at the same time as a "hypothetical" defendant who received the same sentence, but was out on bail prior to his conviction. The majority opinion found that *Middleton* was not "fair" to indigent defendants who are unable to post bail while awaiting prosecution. For the reasons outlined below, I strongly dissent from the majority opinion because it is not "fair" to the victim of this savage domestic violence and terror.

### A. Understanding Why the Trial Court Imposed Consecutive Sentences on the Defendant

When defendants receive multiple convictions, trial judges in this State have wide discretion in deciding whether to impose concurrent or consecutive sentences. *See State v. Allen*, 208 W.Va. 144, 155, 539 S.E.2d 87, 98 (1999) ("As for the circuit court's decision to impose consecutive, rather than concurrent, sentences, we likewise find no abuse of discretion. At this juncture, however, we wish to emphasize that, while the members of this Court, had we been sentencing Allen for his numerous misdemeanor convictions, would not necessarily have ordered his sentences to run consecutively, this disagreement, standing alone, does not necessitate a reversal of the sentences imposed by the trial court."); Syl. pt. 3, *Keith v. Leverette*, 163 W.Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively."). Moreover, this Court has recognized that " '[c]onsecutive sentences are an appropriate mechanism for imposing a distinct punishment for each of two criminal acts.' " *State v. Holcomb*, 178 W.Va. 455, 462, 360 S.E.2d 232, 239 (1987) (quoting *United States v. Lustig*, 555 F.2d 751, 753 (9th Cir.1977)).

In the instant proceeding, the defendant was convicted of five offenses and sentenced as follows: attempted first degree murder—3 to 15 years; malicious assault—2 to 10 years; arson—2 years; violation of domestic violence protective order—1 year; and domestic battery—1 year. Under its discretionary authority, the trial court could have imposed concurrent sentences for each conviction. If that had been done, the defendant collectively would have received a sentence of 3 to 15 years. Under a concurrent sentence the defendant would have been eligible for parole after 3 years. However, the trial court elected to impose consecutive sentences for each conviction under consecutive sentences. The defendant would not be eligible for parole until after serving 9 years imprisonment.

The trial court did not show the defendant mercy by imposing concurrent sentences because the defendant failed to show any remorse, and because of the terror the defendant imposed on the victim. This is to say that the trial court took into consideration what was fair to the victim in deciding what punishment was appropriate for the defendant.

The record in this case showed that the victim had filed for divorce from the defendant in February 2006. On March 13, 2006, while the divorce was pending, the victim obtained her second domestic violence protective order against the defendant. After receiving the second protective order, the victim went home. Shortly after returning

home, the victim watched television with her son's girlfriend, Jacqueline Stanley. The victim testified during the trial that, while she was watching television, the defendant forced his way into the home. After entering the home, the defendant forced Ms. Stanley to leave and thereafter attacked the victim. The victim described the attack as follows:

Q. Okay. What happened then?

A. ... And then he came after me and pushed me down on the couch, and he started to—he started to—he started to cut my throat. And I fought with him, you know, he held me down, and he was trying to, uh, stop my hands from—he was trying to get my hands in his grip with his left arm that he had across my chest.

Q. What were you doing with your hands at that time?

A. Well, I was pushing the knife away and trying to stop him from cutting me. He cut me once, and I pushed him away, and he came at me again. And it was like a sawing cutting. And then he ran out the door.

Q. Did he say anything to you as he was sawing or cutting at your throat?

A. Nothing.

Q. Did you feel anything when he was sawing and cutting at your throat?

A. Terror. I thought I was going to die.

* * * *

Q. When the attack ended, what did you see David Eilola do?

A. He went out the front door.

Q. And what was going through your mind at this point?

A. Find my cell phone....

Q. Did you find your cell phone?

A. No. I never found it. I got up off the couch, and I was looking for it. And a couple of minutes later he came through the front door again, and this time he had the gas can with him.

* * *

Q. Did you say anything to him?

A. I just said, "David, don't do this." I said, "What are you doing? Don't do this."

Q. And what was his response when you said, "David, don't do this?" What did he do?

A. He splashed—He threw the gas across the living room into the kitchen, and then he splashed it over the chair, and then he came towards me, and he splashed it up towards me. And I said, "My God, David, don't do this." And then he walked right up to me and he held it over the top of my head, and he just poured it all over me.

* * *

Q. ... [W]hat happened after he splashed the gas on you?

A. I tried to run out the front door, and he knocked me down. And I was on my back by the front door, and he was holding me down again across the top of my chest. And he took—he took a lighter out of his pocket, and he leaned over me and he lit the carpet beside me.

* * *

Q. Okay. What was going through your mind at this point?

A. I'm going to go up in flames.

Q. And what happened then?

A. I—He lit the carpet down by where my hand was, and I batted it out and just—I just kept begging him to please don't do this, don't do this to me.... And he just—he went to light the carpet [again], but he didn't. And he just stopped.[1]

It is quite obvious that the victim's testimony of the brutal terror she endured at the hands of the defendant was a primary reason for the trial court's imposition of consecutive sentences. The consecutive sentences represented the trial court's beliefs that the defendant did not deserve to be released early from prison and that the physical and emotional injury to the victim demanded that the defendant not be released early. *See State v. Tyler*, 211 W.Va. 246, 251–52, 565 S.E.2d 368,

1. The record indicates that the defendant left the home without burning the victim to death. Thereafter, the defendant fled to the state of Arizona, where he eventually was arrested and returned to West Virginia.

373–74 (2002) ("Even where victims have not been harmed during armed robberies, this Court has considered the emotional damage suffered by the victim.").

### B. The Decision in Middleton Was Fair to Victims of Domestic Violence and Other Crimes

As previously indicated, under the decision in *Middleton* the defendant would not be eligible for parole until after serving 9 years in prison. The majority opinion believed that the application of *Middleton* to the defendant was unfair, because (1) he was indigent and not able to use his presentence incarceration to shorten his parole eligibility date[2] and (2) a hypothetical defendant who was out on bail prior to trial, and received the same type of sentence, would be eligible for parole at the same time as the defendant. Assuming, as contended by the majority, that this situation is unfair, there is no state or federal constitutional violation because of this "unfairness."

The majority opinion fails to realize that many things involved with criminal prosecutions are not fair to defendants. No criminal justice system exists which is completely fair in all respects to every defendant. For example, two defendants conspire to commit a crime, one defendant is indigent and the other is not. The defendant who is not indigent enters a plea of guilty and receives a sentence of probation. The indigent co-conspirator is convicted at trial and is sentenced to imprisonment. Is that situation fair? Again, two defendants commit separate murders. One defendant, who is indigent, is convicted and sentenced to life with the possibility of parole. The second defendant, who is not indigent, is convicted and sentenced to life without the possibility of parole. Is this situation fair? I could go on by illustrating a multitude of examples that are not fair in criminal prosecutions. *See State*

*v. Booth,* 224 W.Va. 307, 685 S.E.2d 701 (2009) (finding defendant's 80 year sentence for robbery was not disproportionate to the sentences received by his co-defendants, namely 1 to 5 years and 1 to 50 years); *State v. Riley,* 201 W.Va. 708, 500 S.E.2d 524 (1997) (defendant sentenced to 32 years for second-degree murder); *State v. McKenzie,* 197 W.Va. 429, 475 S.E.2d 521 (1996) (defendant sentenced to 5 to 15 years for second-degree murder). However, in the final analysis, the state and federal constitutions determine what type of "unfairness" will be prohibited in criminal prosecutions. *See State v. Jones,* 216 W.Va. 666, 669, 610 S.E.2d 1, 4 (2004) ("Disparate sentences for codefendants are not per se unconstitutional." (citation omitted)). There is no authority under the state or federal constitution that prohibited the "unfairness" that the majority believes *Middleton* inflicts on indigent defendants.

The decision in *Middleton* was premised on the fairness to victims of crime, and, in the instant case, to a victim of domestic violence and terror. As previously stated, under *Middleton* the defendant would have to serve 9 years in prison before he would be eligible for parole. Considering the terror that the victim endured in this case, fairness to the victim demanded that this defendant sit in prison for at least 9 years before he was released.

The majority opinion has blatantly rejected the concept of fairness for a victim of domestic violence and terror and has decided that the law of West Virginia must focus instead upon fairness to a defendant who sliced a woman's throat, stabbed her face, poured kerosene on her, and attempted to burn her alive. I readily admit that if I have to choose between fairness to a victim of violent terror and fairness to the perpetrator of violent terror, I would choose fairness to the victim every day of the week.

---

**2.** The majority opinion is disingenuous to the extent that it believes only poor or indigent defendants cannot post bail. There are defendants who are not indigent but who cannot post bail simply because it is set too high. In fact, in the instant case the defendant initially retained counsel and did not qualify as an indigent. It was only during the course of pretrial litigation that the defendant fired his retained counsel, because of a dispute over the amount of money needed for the defendant to have a psychiatric evaluation. Only after the defendant fired his retained counsel did the defendant qualify for court-appointed counsel. Further, the record indicates that the defendant's initial bail was $50,000. The defendant, through retained counsel, sought to have bail reduced to $10,000, which request was denied by the trial court.

### C. The Majority Opinion Rewards Criminal Defendants Who Cannot Post Bail

In order to understand how the majority opinion now rewards criminal defendants, I must first provide an example of how *Middleton* operated before it was overruled. The effect of the *Middleton* opinion was that of allowing a defendant to have less time on parole. For example, assume that two defendants have the same consecutive sentences of 1 to 5 years and 2 to 5 years. Moreover, one defendant was out on bail before sentencing, while the other defendant was in jail for one year before sentencing. Both defendants are eligible for parole after three years, and both are given parole. Pursuant to W. Va.Code § 62–12–18 (1997) (2004), a defendant must be sentenced to parole for the maximum period left on the sentence. Thus, under *Middleton*, the defendant who was in jail for one year before sentencing will be placed on parole for 6 years, but the other defendant would be on parole for 7 years (this hypothetical does not include good-time credit that the defendants may have accrued). Under this situation, the indigent defendant obtains the benefit from being locked up prior to sentencing, and the person who was out on bail is penalized for getting out on bail prior to sentencing. I say penalized because a person on parole is not totally free. Under W. Va.Code § 62–12–17 (2004), strict conditions are placed on defendants who are on parole.

To be clear, the *Middleton* decision allowed a defendant to use presentence incarceration only once. That was for the purpose of shortening the aggregated maximum term of consecutive sentences. The majority opinion, by overruling *Middleton*, allows a defendant to use presentence incarceration *twice.* In the instant case, the defendant will use his presentence incarceration to make him eligible for parole almost two years before he should be eligible. Then, the defendant will use the presentence incarceration to shorten his time on parole by almost two years before it should expire. While I am certain the defendant appreciates the majority's get-out-of-jail free card, the defendant's ex-wife [3] must now wrestle with the nightmares of wondering if the defendant will attack her again upon his early release from prison.

For the reasons outlined, I respectfully dissent.

---

3. The victim is now divorced from the defendant.