# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0969** (Morgan County 17-F-18)

**Erick D. Shute,**
**Defendant Below, Petitioner**

**FILED**

**February 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Erick D. Shute, by counsel B. Craig Manford, appeals the Circuit Court of Morgan County's August 15, 2018, conviction order and the resulting September 26, 2018, sentencing order. Respondent State of West Virginia, by counsel Patrick Morrisey, Attorney General, and Shannon Frederick Kiser, Assistant Attorney General, filed a response in support of the circuit court's orders. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the day before the tragic events surrounding this matter, Terry Marks came to West Virginia from his home in Pennsylvania. Mr. Marks had received a call from Jack Douglas, who had asked Mr. Marks to assist him with hooking up water service for Mr. Douglas's daughter.

Mr. Douglas had been asked by a property owner to keep an eye on a vacant residence located at 1162 Gamble Lane, the location of the events at issue in this case. After arriving in West Virginia, Mr. Marks and Mr. Douglas drove around the Gamble Lane property and then returned to Mr. Douglas's home. While driving around the property that evening, Mr. Marks testified that he saw petitioner, armed with a rifle in the woods beside the property, but he testified that neither he nor Mr. Douglas spoke to nor had any interaction with petitioner that evening.

On June 13, 2016, Mr. Douglas, Mr. Marks, and Travis Bartley worked at Mr. Douglas's daughter's house until approximately 3:00 p.m. When they were finished, the gentlemen went to check on the Gamble Lane property. The three men drove to the property and, upon arriving at the property, found about thirty yards of logs and debris blocking the driveway. Mr. Douglas sent Mr. Travis Bartley to get Travis's father, William Bartley, Jr., and a chainsaw to help clear the debris. When the Bartleys returned with the chainsaw, the four men cleared the debris from the roadway.

1

While clearing the debris, the men saw petitioner with a rifle and the elder Mr. Bartley began talking to petitioner.

While the elder Mr. Bartley was speaking with petitioner, Mr. Marks and Mr. Douglas drove the truck further onto the property, checked around the property, and noticed that items had been moved since the previous day. Believing that "something was wrong," Mr. Marks testified that they got into the truck and prepared to leave to call to discuss their findings with the property owner. When they got back around to the driveway, however, the elder Mr. Bartley and petitioner were arguing. Mr. Marks and Mr. Douglas got out of the truck. Per Mr. Marks' testimony, Mr. Douglas tried to call the police, but he could not get cell phone reception.[1] Mr. Marks testified that he heard petitioner say, "[y]ou don't want to call the police."

Following this comment, petitioner fired his rifle. Mr. Marks testified that Mr. Douglas came around the truck and fell down on his knees, having been struck by a shot fired by petitioner. Next, the younger Mr. Bartley came around the truck and fell on his knees, also having been shot by petitioner. After the younger Mr. Bartley was shot by petitioner, his father came over to pick up his son, and petitioner also shot him.[2] All three of these gentlemen sustained lethal wounds from the gunshots fired by petitioner. Mr. Marks testified that he ran and petitioner shot at him as he ran through the woods, testifying that he "heard the bullets hitting the trees when I was running through them."

After Mr. Marks left the scene, petitioner took Mr. Douglas's cell phone and fled to Pennsylvania. He later called police, identified himself as the shooter, but claimed that the four men were threatening him, which caused him to open fire in self-defense.[3] Petitioner was apprehended in Pennsylvania and was later extradited to West Virginia.

On January 3, 2017, a Morgan County Grand Jury charged petitioner with three counts of first-degree murder for the shooting deaths of Mr. Douglas, and each Mr. Bartley; one count of wanton endangerment for shooting at Mr. Marks; one count of attempted first-degree murder for his shooting attempt of Mr. Marks; and one count of use of a firearm in the commission of a felony. Petitioner was arraigned and the matter was set for trial.[4]

---

[1] After the shootings, petitioner looked at the cell phone and confirmed that Mr. Douglas was actually attempting to call 9-1-1.

[2] Petitioner shot two of the victims in the back. Notably, there was no evidence that any of the victims had a gun either on their person or in the vehicle.

[3] During his call to the West Virginia State Police, petitioner reported that "I took the scum bags off the face of the earth." After he was incarcerated, petitioner later referred to himself as a "hero" for his actions. At trial, petitioner conceded that he told his mom during a jail call that "I was a hero. The people should be thanking me up on the mountain."

[4] Several motions for continuances were filed by both parties and subsequently granted by the circuit court.

On January 16, 2018, petitioner filed a notice that he intended to argue self-defense at trial. Thereafter, on April 17, 2018, the State moved for a pre-trial ruling on the admissibility of character evidence related to petitioner's claim of self-defense, should he similarly attack the character of one of the victims. Petitioner also sought an instruction on "imperfect self-defense."

The State objected to petitioner's proposed imperfect self-defense jury instruction on the ground that it was not a recognized affirmative defense in West Virginia. The circuit court rejected petitioner's imperfect self-defense instruction, agreeing with the State that such a defense was not recognized in West Virginia. Specifically, the circuit court found that "the Supreme Court of Appeals of West Virginia explicitly stated that it did not adopt a theory of self-defense based on the subjective impressions of the accused" in two recent cases, *State v. McIntyre,* No. 13-0420, 2013 WL 6231786 (W. Va. Dec. 2, 2013)(memorandum decision) and *State v. York,* 13-1265, 2015 WL 1881028 (W. Va. Apr. 23, 2015)(memorandum decision).

The case proceeded to trial in July of 2018. During the three-day trial, the State called sixteen witnesses. At the conclusion of the State's case, petitioner moved for a judgment of acquittal, arguing that there was an absence of premeditation evidence. The circuit court denied petitioner's motion finding that the State proffered sufficient evidence to meet its burden of proof.

During the case for the defense, the defense offered testimony from petitioner, his mother, and his friend (Thomas Clarke). Petitioner testified that he shot the individuals because he thought that they were going to kill him. At the close of the defense case, petitioner renewed his motion for a judgment of acquittal, which the circuit court again denied. After deliberating for approximately two hours, the jury returned a verdict finding petitioner guilty of all counts charged in the indictment, further recommending no mercy for the first-degree murder counts.

The circuit court held petitioner's sentencing hearing on September 23, 2018. Following a review of the presentence investigation report, testimony given on behalf of the victims, and a statement provided by petitioner himself, the circuit court sentenced petitioner to life without the possibility of parole for each first-degree murder conviction, and an aggregate term of eighteen to thirty years for his remaining convictions, with all sentences running consecutively to one another.

Petitioner appeals the validity of the underlying convictions and the September 26, 2018, sentencing order. Petitioner asserts four assignments of error from the circuit court order, which we will address in turn.

Initially, petitioner alleges that there was insufficient evidence presented at trial to convict him of first-degree murder, a statutory offense defined by the West Virginia Legislature in West Virginia Code § 61-2-1 as follows:

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree.

Petitioner specifically alleges that the State failed to prove that the killings were premeditated. The State argues that it presented a complete picture of the events as they occurred, including the eyewitness testimony from the only surviving victim and testimony from secondary witnesses to the events surrounding the crimes.

We have held that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 5, *State v. Broughton*, 196 W. Va. 281, 470 S.E.2d 413 (1996).

Upon a review of the trial testimony, this Court finds that petitioner did not meet this heavy burden. At trial, the State called sixteen witnesses to establish what occurred on the afternoon of June 13, 2016, including the only surviving victim. Based upon the testimony of this victim and several other individuals who either witnessed the events before the crimes occurred or heard the gunfire, the jury undertook a credibility determination of the witnesses and found petitioner guilty on all charges. Therefore, this Court will not substitute its judgment for that of the jury and undertake credibility determinations of the parties and the witnesses.

Petitioner also claims that the circuit court erred in not striking "lying in wait" from the State's instruction on the attempted first-degree murder of Mr. Marks. Reviewing the appellate record in light of the standard addressed by the *Guthrie* and *Broughton* cases cited above, we find this assignment of error to be without merit. Specifically, the testimony of Mr. Marks, who the jury found credible, renders petitioner's contention false. Mr. Marks testified that petitioner was observed in the woods with a rifle in his hand on the day before the crimes. When the men returned to the property on June 13, 2016, petitioner had blocked the road to the property with thirty yards of logs and debris. While clearing the debris, petitioner appeared again with a rifle and admitted that he was observing the four victims as they traveled the property. Based upon this testimony, the jury was provided with ample information to conclude beyond a reasonable doubt that petitioner was lying in wait for the four men to arrive.

Next, petitioner argues that the circuit court erred in denying his instruction on imperfect self-defense. Having had the opportunity to consider the imperfect self-defense doctrine on multiple occasions, "[t]his Court has not recognized or adopted the doctrine of 'imperfect self-

defense.'" *York*, 2015 WL 1881028, at *3. Accordingly, as this Court has never adopted this doctrine, we hold that the circuit court did not err in denying petitioner's proposed imperfect self-defense instruction.

Lastly, petitioner argues that the circuit court erred in sentencing him to consecutive life sentences and denying his motion for reconsideration as to the jury's finding of no mercy for each of his first-degree murder convictions. We disagree.

It is well established that "[w]hen a defendant has been convicted of two separate crimes, before sentence is pronounced for either, the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively." Syllabus Point 3, *State v. Allen,* 208 W. Va. 144, 539 S.E.2d 87 (1999)(citing Syllabus Point 3, *Keith v. Leverette,* 163 W. Va. 98, 254 S.E.2d 700 (1979)). Moreover, this Court reviews sentencing orders "'under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, [in part,] *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 2, in part, *State v. Eilola*, 226 W. Va. 698, 704 S.E.2d 698 (2010). Furthermore, "'sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982)." *Eilola*, 226 W. Va. at 699, 704 S.E.2d at 699, syl. pt. 1. Applying a deferential abuse of discretion standard, we find that petitioner's sentence was within the circuit court's discretion and was not based on an impermissible factor. Thus, the sentence is not subject to appellate review. Moreover, this Court finds that petitioner's sentence does not violate statutory or constitutional demands.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 24, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison