**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED**

**June 23, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,
Plaintiff Below, Respondent**

**vs.)  No. 20-0471** (Berkeley County 18-F-180)

**Joshua C. Newill,
Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner Joshua C. Newill, by counsel Shawn R. McDermott, appeals the Circuit Court of Berkeley County's June 4, 2020, sentencing order, sentencing petitioner to a determinate term of six years following his plea of guilty under *Alford* circumstances to voluntary manslaughter. Respondent the State of West Virginia, by counsel Katherine M. Smith, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was arrested on October 11, 2017, on the charge of first-degree murder related to a shooting that occurred on October 6, 2017. On May 17, 2018, a Berkeley County grand jury returned an indictment against petitioner charging him with second-degree murder. Petitioner was released on bail, subject to the condition that he be placed on home confinement. In its May 21, 2018, agreed bail order, the circuit court indicated that the conditions of petitioner's bail were "to ensure [petitioner's] appearance at all required court hearings and to protect the community." On May 22, 2018, petitioner signed an "Agreement to [C]omply with Home Confinement Rules of Supervision."

Petitioner reached multiple plea agreements with the State that were presented to the circuit court. On December 20, 2018, petitioner reached his initial plea agreement with the State and his first plea hearing was conducted on January 17, 2019. During the initial plea hearing, the circuit court engaged in a plea colloquy with petitioner to ensure that the plea was knowing and voluntary.

1

The circuit court did not adjudge petitioner guilty, but instead held the plea in abeyance, explaining:

> And I am – just because of the stage of the proceedings we're at, what I was going to do is conditionally accept it. In other words, I think you have the basics there. I have to make some determination based upon the Presentence Investigation Report, and also I would like to hear from the victim's family before I settle finally on whether it serves the public interest to accept it or not.

On April 1, 2019, petitioner appeared before the circuit court for an adjudication and sentencing hearing and the court rejected the first plea agreement. On April 25, 2019, petitioner entered into his second plea agreement, which the court rejected on May 13, 2019. Thereafter, on October 28, 2019, petitioner entered into his third plea agreement on the charge. Petitioner's third plea agreement was an *Alford* plea to voluntary manslaughter, a lesser included offense of second-degree murder as charged in the indictment. Pursuant to the terms of the third plea agreement, the parties agreed that they would "be free to argue for any lawful sentence, however, the State . . . agree[d] to a cap of six years"; this plea agreement did not provide for any credit for petitioner's time spent on home confinement. Ultimately, on October 28, 2019, the circuit court accepted petitioner's third plea agreement.

On June 4, 2020, petitioner was sentenced to "a determinate sentence of six years in the custody of the Division of Corrections." The circuit court granted petitioner credit for his time served in the Eastern Regional Jail prior to his conviction (totaling 212 days), as well as time spent on post-conviction home confinement (221 days from petitioner's third guilty plea on October 28, 2019, through his sentencing on June 4, 2020). Thus, petitioner's effective sentence date was March 30, 2019.

Petitioner filed this appeal raising two assignments of error. First, petitioner claims that he was constitutionally entitled to credit against his prison sentence for the time spent in pretrial custody on home confinement, arguing that the pretrial home confinement was the functional equivalent of incarceration. Also, he claims that he was entitled to credit against his prison sentence for time spent on home confinement subsequent to his guilty plea but prior to the court rejecting the guilty plea.

"The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

Petitioner claims that he is constitutionally entitled to credit against his prison sentence for time he spent on home confinement as a condition of his pretrial, as opposed to post-conviction, bail because his home confinement "was the functional equivalent of actual incarceration and contained all of the minimum conditions under the [Home Incarceration Act] for post-conviction home confinement." Respondent maintains that petitioner is not constitutionally entitled to credit against his sentence for time spent on home confinement as a condition of pretrial bail because the Home Incarceration Act ("Act"), as codified at West Virginia Code §§ 62-11B-1 to - 13, does not apply. Per respondent, the Act applies only to "offenders," which it defines as "any adult convicted

of a crime punishable by imprisonment or detention in a county jail or state penitentiary; or a juvenile convicted of a delinquent act that would be a crime punishable by imprisonment or incarceration in the state penitentiary or county jail, if committed by an adult." W. Va. Code § 62-11B-3(3). Therefore, as set forth by respondent, the Act applies only in post-conviction situations. We agree with respondent.

This Court has never characterized home confinement as a condition of pretrial bail as a form of incarceration akin to time spent in jail. In fact, this Court has repeatedly held

> "When a person who has been arrested, but not yet convicted of a crime, is admitted to pre-trial bail with the condition that he be restricted to home confinement pursuant to West Virginia Code § 62–1C–2(c) (1992), the home confinement restriction is not considered the same as actual confinement in a jail, nor is it considered the same as home confinement under the Home Confinement Act, West Virginia Code §§ 62–11B–1 to –12 (1993). Therefore, the time spent in home confinement when it is a condition of bail under West Virginia Code § 62–1C–2(c) does not count as credit toward a sentence subsequently imposed." Syllabus Point 4, *State v. Hughes*, 197 W. Va. 518, 476 S.E.2d 189 (1996).

Syl. Pt. 2, *State v. Jedediah C.*, 240 W. Va. 534, 814 S.E.2d 197 (2018).

Since petitioner's pretrial home confinement was not penal in nature, but was in place to ensure his appearance at all court hearings and to protect the community, he is not entitled to credit for that time.

Although petitioner claims that his constitutional rights were violated because he was not given credit for his pretrial home confinement period, these claims are unavailing. First, petitioner's right to be free from double jeopardy was not violated. "The constitutional prohibition of double jeopardy consists of three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; (3) and it protects against multiple punishments for the same offense." *State ex rel. Day v. Silver*, 210 W. Va. 175, 178, 556 S.E.2d 820, 823 (2001) (citation omitted). Although petitioner's arguments relate to the third guarantee, he does not cite to any authority that holds, or even suggests, that home confinement as a condition of pretrial bail is considered punishment for the purpose of double jeopardy analysis. Moreover, this Court has held that "the purpose of pretrial bail is not to punish, but rather it acts as 'security for the appearance of a defendant to answer to a specific criminal charge before any court or magistrate at a specific time or at any time to which the case may be continued.'" *Hughes*, 197 W. Va. at 527-28, 476 S.E.2d at 198-99. Here, since the condition of pretrial confinement – to secure petitioner's appearance at future hearings and to protect the public – was not ordered pursuant to any conviction, it cannot be said that it was ordered to "punish" petitioner.[1]

---

[1] Additionally, we are not persuaded by petitioner's argument that his sentence was impermissibly increased beyond the mandatory minimum sentence for voluntary manslaughter in

(Continued . . . )

Although petitioner argues that the equal protection clause is implicated in this matter because home incarceration is treated differently depending on whether the home incarceration is imposed pretrial or post-trial, this is also not persuasive. The equal protection clause is implicated when similarly situated persons are treated differently and petitioner ignores a critical fact: pre- and post-trial defendants are not similarly situated, and, thus, and are not afforded the same protections. Although an equal protection issue may arise "when two people receive a sentence for the same term of incarceration but one of those people actually serves a longer period of time in jail *simply because he or she is financially unable to post the bail* required to secure pretrial release." *State v. McClain*, 211 W. Va. 61, 67, 561 S.E.2d 783, 789 (2002) (emphasis added). That situation, causing an inequity as a result of economic disparity, did not occur here because petitioner's financial circumstances did not play any in the terms of his pretrial bail. Therefore, the equal protection clause has no application here.

Petitioner's due process claim is inadequately briefed and does not conform to the requirements of Rule 10(c)(7) of the Rules of Appellate Procedure. Petitioner simply claims that his right to due process was "violated," but fails to articulate how the circuit court's refusal to credit his sentence with the time he spent on pretrial home confinement was in violation of his right to due process. Rule10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . The argument *must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure, and thus, we decline to address this assignment of error on appeal.

Further, petitioner's argument that a term of the plea agreement was violated is also unavailing. Per his plea agreement, petitioner agreed to a term of six years in the penitentiary,

---

violation of the Sixth Amendment of the United States Constitution, where he was not given credit for the year and a half that he served while on home incarceration. As we discussed above, inasmuch as this Court has never characterized home confinement as a condition of pretrial bail as a form of incarceration akin to time spent in prison or jail, we refuse to do so now. *See Jedediah C.*

which is the sentence he received. Petitioner's argument on this point is the same as earlier – his "pre-trial home incarceration was qualitatively penal and the functional equivalent of incarceration." As addressed above, petitioner's pretrial bail was not punitive in nature and cannot be considered as another form of incarceration for the purpose of calculating credit for time served. Thus, we refuse to disturb his sentence.

Finally, petitioner claims that he is entitled to credit for the time he spent on home confinement between the time that he tendered his first guilty plea until the court ultimately accepted his plea. As noted above, since petitioner was not an "offender" as defined under the Act during that time period, he is not entitled to credit for his time spent on home confinement between those dates. Moreover, even if the Act were applicable to this case, the granting of credit for time spent on home confinement as a condition of bail is not mandatory, but instead is within the sound discretion of the court. Therefore, petitioner's second assignment of error is without merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton